[Cite as *State v. Corder*, 2017-Ohio-7039.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 17AP-24 |
| v. | : | (C.P.C. No. 15CR-1376) |
| Steven L. Corder, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

N U N C   P R O   T U N C[1]
D E C I S I O N

Rendered on August 1, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie B. Swanson*, for appellee. **Argued:** *Valerie B. Swanson.*

**On brief:** *Blaise G. Baker*, for appellant. **Argued:** *Blaise G. Baker.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1}   Defendant-appellant, Steven L. Corder, appeals a judgment entered by the Franklin County Court of Common Pleas on January 10, 2017, sentencing him to serve ten years in prison.  Because we find that the trial court failed to make the required inquiry on Corder's specific complaints regarding his counsel, we reverse and remand to the trial court so it can make the necessary inquiry.  In the event Corder's complaints prove unfounded, the trial court may re-enter judgment on the previously rendered verdicts.  However, if the court finds that such complaints are well-taken, the court shall hold a new trial on Counts 1 and 5 (if the prosecution elects to retry the case).

---

[1] We issue this decision, nunc pro tunc, to correct minor typographical errors in our July 27, 2017 decision in paragraph 24.

No. 17AP-24

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   A Franklin County Grand Jury indicted Corder on March 20, 2015 for three counts of gross sexual imposition, one count of rape of a minor less than 13 years of age, and one count of unlawful sexual conduct with a minor.   (Mar. 20, 2015 Indictment.) Following a jury trial on the rape count and the three gross sexual imposition counts, the jury found Corder guilty of the first count of gross sexual imposition and not guilty of all remaining counts.  (Jan. 6, 2017 Verdict Forms.)  The unlawful sexual conduct count was separately tried to the bench and the trial court found Corder guilty of that offense.  (Jan. 6, 2017 Bench Verdict Form.)

{¶ 3}   In November 2015, over a year before the case went to trial, the trial court held a hearing during which Corder decided to reject a plea deal that was to have resulted in a five-year sentence.  That hearing ended as follows:

> THE COURT: Okay. Let me tell you how it works in my court just before you make such a determination. You go to trial and there's a jury, you're going for life.[2] If there's a joint rec. by counsel, even if I can't stomach it, I agree to it.
>
> So you go back and you think of what they said, five years or the rest of your life and we'll see you for trial, okay?
>
> THE DEFENDANT: All right.
>
> [DEFENSE COUNSEL]: He also wants to fire me, Judge.
>
> THE COURT: You don't get to fire him.
>
> Next.
>
> [DEFENSE COUNSEL]: Thank you, Judge.

(Tr. at 5-6, filed Apr. 7, 2017.)

---

[2] Although Corder was not ultimately convicted of an offense that would have permitted the trial court to impose life and this is not raised as an issue in this appeal, we note that the Supreme Court of Ohio has said:

> "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort * * *." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), citing *North Carolina v. Pearce*, 395 U.S. 711, 738, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (Black, J., concurring in part and dissenting in part). There is no question, then, that a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law. *See State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989).

*State v. Rahab*, ___ Ohio St.3d ___, 2017-Ohio-1401, ¶ 8 (Slip Opinion)

No. 17AP-24

{¶ 4} Following that hearing, Corder filed three pro se motions on July 21, October 21, and December 19, 2016. In the first such motion, Corder sought to have his appointed counsel removed for alleged deficient performance, specifically: (1) failure to obtain employment verification, (2) failure to obtain text messages, phone records, (3) failure to obtain parole board violation hearing results from December 2014, and (4) failure to communicate, failure to answer phone calls and return phone calls, lack of communication. (July 21, 2016 Mot. to Dismiss Counsel.) In the second motion, Corder sought to have the same counsel removed on similar grounds: (1) failure to discuss trial tactics and questions, (2) failure to obtain text messages and or phone records, (3) failure to communicate, failure to answer phone calls and/or return phone calls, lack of communication, (4) failure to discuss discovery findings and results, and (5) failure to obtain parole board violation hearing results from December 2014. (Oct. 21, 2016 Mot. to Dismiss Counsel.) In the third motion, Corder sought to disqualify Judge Lynch for failure to consider removing ineffective counsel and substituting different counsel. (Dec. 19, 2016 Mot. to Disqualify.)

{¶ 5} The trial court never ruled on these motions before trial in January 2017 and stated during trial, "I don't read your motions. You're represented by counsel, so when I get something from you, I don't read it, 'cause that's why you have counsel." (Tr. at 15.) However, the trial court did note, prior to jury selection on the first day of trial:

> THE COURT: Mr. Corder, I asked for you to be brought out early just because I realized you've had some stress over this, stress between me, stress between your lawyers, stress between all of this. But you do know that the Disciplinary Counsel did deny --
>
> THE DEFENDANT: Yes.
>
> THE COURT: -- your case. So we're set to go and I'm going to be your judge. We're set to go. He's going to be your lawyer.

(Tr. at 7.)

{¶ 6} During the course of the trial, four witnesses testified – Ja.S. (the alleged victim) who was age 12 to 13 at the time of the alleged crimes and age 15 at the time of trial, J.S. (Ja.S.'s mother), Corder's girlfriend, and a police detective.

No. 17AP-24

{¶ 7} J.S. testified that she found posters in Ja.S.'s room which said, "I love Steven Corder." (Tr. at 53.) She also said that Ja.S. frequently followed Corder around during the Summer and Fall 2014 and would defend him if anyone spoke badly about him. (Tr. at 58-59.) Following a conversation with her daughter about activities between her and Corder, J.S. took Ja.S. to Children's Hospital where she was interviewed. (Tr. at 55.) However, Ja.S. apparently did not disclose anything to Children's Hospital and declined to be examined. *Id.* J.S. also testified that in 2014, Ja.S. began having emotional problems and was cutting herself. (Tr. at 45-46.)

{¶ 8} Ja.S testified that any time she was alone with Corder he would rub her breasts and butt and stick his fingers in her vagina. (Tr. at 70-72, 165.) She related that she failed seventh grade twice and was cutting herself because Corder molested her. (Tr. at 66-67.) She said that on one occasion Corder rubbed his penis in her unclothed vagina. (Tr. at 76-77, 151-59.) She was more specific about this event when testifying directly to the bench (regarding the allegations of unlawful sexual conduct) without the jury present. *Id.* In that recitation, she even alleged that Corder's girlfriend walked in during this event and witnessed it, asking Corder something to the effect of "[w]hy are you screwing my cousin?" (Tr. at 156.)

{¶ 9} However, Ja.S.'s testimony was vague about what Corder allegedly did to her and when or where he allegedly did it. She denied having posters which said "I love Steven Corder." (Tr. at 94.) Though she repeatedly insisted her failure to report these incidents was because she was scared, she admitted that no one blamed her, punished her, yelled at her, or failed to take her allegations seriously. (Tr. at 95-97.)

{¶ 10} Corder's girlfriend testified that Corder and Ja.S. followed each other around. (Tr. at 118-19.) Based on Corder being ten years older than the child during the relevant time period, Corder's girlfriend believed this was inappropriate. (Tr. at 119.) She did not corroborate Ja.S.'s claim that she had walked in and found Corder with his penis on or in Ja.S.'s vagina.

{¶ 11} When the detective testified, he stated he had worked as a police officer since 1990 but that most of that time was as a patrol officer. (Tr. at 122.) In the past three and one-half to four years, he had begun working in the special victims unit. *Id.* He was not

No. 17AP-24

formally voir dired or qualified as an expert. Nevertheless, he testified without objection in the following ways:

> A. Well, juveniles, I think what you're trying to get at is mainly they don't disclose as much as adults do.
>
> Q. Well, just tell me some of your experiences, your personal experiences as a detective based on your training and knowledge in investigating these kind of cases.
>
> A. Yeah. Adults, when something happens, they tend to tell you right away, not always, for the most part. Juveniles, they don't disclose -- we have -- a lot of our cases, they don't disclose sex abuse until weeks, months, years later.

(Tr. at 123.) He also testified that despite not revealing substantially anything to Children's Hospital, Ja.S. opened up a bit more to him, which is what precipitated charges being brought. (Tr. at 136-37.) Of particular relevance to this appeal, he testified:

> She seemed a little timid, which is only natural for a victim. She was a little more forthcoming than the initial interview at the CAC [Children's Advocacy Center at Children's Hospital]. At the CAC she appeared to be holding back a little bit, she didn't want to tell everything. When I talked to her in my car, she seemed timid but she seemed to let loose with a little more information.

(Tr. at 133.) He also testified that he saw a snapshot of Ja.S.'s phone where something about "love Steven Corder" was written on it. (Tr. at 148.) However, he did not preserve that evidence. (Tr. at 145-46, 148.) He also admitted there was no physical evidence in the case. (Tr. at 145.)

{¶ 12} Following the verdicts of the jury and the bench finding Corder guilty of one count of gross sexual imposition and one count of unlawful sexual conduct with a minor, the trial court reconvened for sentencing on January 9, 2017. (Tr. at 214-16, 219.) The trial court imposed consecutive sentences; it imposed two years on the gross sexual imposition count and eight years on the unlawful sexual conduct count, which together added up to a total term of ten years in prison. (Tr. at 228; Jan. 10, 2017 Jgmt. Entry at 2.) Corder now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Corder assigns three errors for our review:

No. 17AP-24

[1.] The trial court erred to the prejudice of Defendant-Appellant by improperly sentencing him to consecutive terms of incarceration in contravention of Ohio's sentencing statutes.

[2.] The trial court deprived Defendant-Appellant of his right to effective counsel as guaranteed by the Sixth Amendment to the United States Constitution.

[3.] The trial court committed prejudicial error when it permitted [the] Detective * * * to testify as to the behavior of juveniles involved in sexual abuse cases.

## III. DISCUSSION

### A. Second Assignment of Error – Whether the Trial Court Erred in Refusing to Consider or Investigate Corder's Request to Dismiss His Counsel

{¶ 14} The United States Supreme Court has explained that a defendant has a right to be represented by counsel of his or her choice and that deprivation of this right is structural error. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 150 (2006). However, this right is nonetheless limited in a number of respects. As the Court has remarked:

> [T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them. Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation. We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar. The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."

(Citations omitted.) *Id.* at 151-52, quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988), citing *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989); *Wheat* at 159-60, 163-64; *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Based on these principles, the Supreme Court of Ohio has explained that:

> Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict

No. 17AP-24

> between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." In addition, courts should "balance * * * the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." Decisions relating to the substitution of counsel are within the sound discretion of the trial court.

(Citations omitted.) *State v. Jones*, 91 Ohio St.3d 335, 342-43 (2001), quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996), citing *Wheat* at 164.

{¶ 15} The Supreme Court of Ohio has also clarified that a trial court's entire failure to carry out its duty to investigate a defendant's specific objection about his or her counsel's efficacy is grounds for reversal. *State v. Deal*, 17 Ohio St.2d 17, 18-20 (1969). *Deal* has been interpreted to justify reversal when a defendant makes specific allegations regarding his counsel's performance and the trial court fails to appropriately inquire:

> In the wake of *Deal*, Ohio's appellate courts have reversed convictions when trial courts fail to make on-the-record inquiries into specific objections about the performance of court-appointed counsel. Notably, however, courts have read *Deal* as imposing on a defendant the initial burden of articulating specific concerns about his appointed counsel. Absent specific objections to counsel's performance, the trial court has no duty to investigate anything. *See, e.g., State v. Carter* (1998), 128 Ohio App.3d 419, 715 N.E.2d 223 ("The defendant bears the burden of announcing the grounds for a motion for appointment of new counsel. If the defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record * * *. [This] limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further."); *State v. Harris* (Nov. 27, 1992), Lucas App. No. L-92-039, 1992 Ohio App. LEXIS 5982 ("The duty to inquire described in *State v. Deal* is not a duty to inquire into the grounds of the motion. The accused bears the duty of announcing the grounds of the motion."); *State v. Simons* (Nov. 22, 2000), Champaign App. No. 99 CA5, 2000 Ohio App. LEXIS 5411 (reasoning that "the mere claim of a 'conflict of interest,' without more, is not a sufficiently specific allegation to trigger the duty to investigate further"); *State v. Davis* (May 18, 1998), Franklin App. Nos. 97 APA08-1020, 97 APA08-1021, 1998 Ohio App. LEXIS 2210 ("When * * * a defendant fails to raise specific concerns about his appointed counsel with the

No. 17AP-24

court during trial, we have held that the requirements of Deal are not implicated."); *State v. Smith* (Sept. 14, 2000), Cuyahoga App. No. 76998, 2000 Ohio App. LEXIS 4183 ("In order to necessitate [a *Deal*] inquiry, the defendant must announce grounds for appointment of new counsel which are sufficiently specific to trigger the duty of further investigation."); *State v. King* (1995), 104 Ohio App.3d 434, 438, 662 N.E.2d 389 (acknowledging the *Deal* court's requirement that "allegations of ineffective assistance had to be 'specific, not vague or general' "); *State v. Washington* (Aug. 17, 2001), Hamilton App. Nos. C-000754, B-0005453, 2001 Ohio App. LEXIS 3604 (reasoning that "the better rule requires the defendant to raise concerns about his appointed counsel with sufficient specificity to warrant further investigation," and noting that "a trial court, without more, does not abuse its discretion in finding that a general allegation of unhappiness with appointed counsel is so vague that it does not require additional investigation").

*State v. Hibbler*, 2d Dist. No. 2001-CA-43, 2002-Ohio-4464, ¶ 15. This Court also has recognized that it is "reversible error" for a trial court to not inquire about and make part of the record a defendant's complaints concerning the efficacy of his or her counsel. *State v. Washington*, 10th Dist. No. 94APA11-1653, 1995 WL 373531, 1995 Ohio App. LEXIS 2586, *4-5 (June 20, 1995).

{¶ 16} In this case, Corder's counsel informed the trial court that Corder wished to discharge him on November 12, 2015. (Tr. at 6.) The trial date set at that time was January 11, 2016 but the trial did not begin until almost a year later, on January 4, 2017. (Nov. 12, 2015 Continuance Entry; Tr. at 7.) The trial court responded to that request that his counsel be removed as follows:

> [DEFENSE COUNSEL]: He also wants to fire me, Judge.
>
> THE COURT: You don't get to fire him.
>
> Next.
>
> [DEFENSE COUNSEL]: Thank you, Judge.

(Tr. at 6.)

{¶ 17} In the intervening time between the initial rejection of his request and trial over one year later, Corder set forth his complaints about counsel in two pro se motions, on July 21, and October 21, 2016. Common to both motions was the bullet-pointed allegation

No. 17AP-24

of counsel's "[f]ailure to communicate, failure to answer phone calls, and return phone calls, lack of communication." (July 21, 2016 Mot. to Dismiss Counsel; Oct. 21, 2016 Mot. to Dismiss Counsel.) In other words, Corder alleged, in the language of *Jones*, a "total lack of communication preventing an adequate defense." *Jones* at 342. Yet the trial court did not inquire into, substantively address, or even read the motions. As the court put it, "I don't read your motions. You're represented by counsel, so when I get something from you, I don't read it, 'cause that's why you have counsel." (Tr. at 15.) The court's only acknowledgment that it was even aware that Corder had repeatedly asked for an attorney many months before trial was the following comment on the morning of jury selection:

> THE COURT: Mr. Corder, I asked for you to be brought out early just because I realized you've had some stress over this, stress between me, stress between your lawyers, stress between all of this. But you do know that the Disciplinary Counsel did deny --
>
> THE DEFENDANT: Yes.
>
> THE COURT: -- your case. So we're set to go and I'm going to be your judge. We're set to go. He's going to be your lawyer.

(Tr. at 7.)

{¶ 18} Decisions which address the substance of a substitution of counsel request are matters within the discretion of the trial court. *State v. Murphy*, 91 Ohio St.3d 516, 523 (2001). But, as discussed at length above, trial courts are legally obliged to inquire into specific allegations of inefficacy and make that inquiry part of the record. The failure to do so is an error of law and both we and the Supreme Court of Ohio in *Deal* have previously recognized that reversal is appropriate in such circumstances. *Deal* at 18-20; *Washington* at *4-5.

{¶ 19} Plaintiff-appellee, State of Ohio, argues that the issue is waived because Corder did not assert the issue at trial. (State Brief at 26-32.) However, Corder's counsel raised it in a hearing on November 12, 2015, which was a scheduled trial date before the court elected to continue the trial. (Tr. at 4, 6; Nov. 12, 2015 Continuance Entry; Tr. at 7.) Then Corder raised it in two pro se motions, and he filed a pro se motion to disqualify Judge Lynch. (July 21, 2016 Mot. to Dismiss Counsel; Oct. 21, 2016 Mot. to Dismiss Counsel; Dec. 19, 2016 Mot. to Disqualify.) Though Corder did not re-raise the matter during the trial

No. 17AP-24

date on which the trial itself actually went forward, the trial court preemptively addressed the issue, saying, "[s]o we're set to go and I'm going to be your judge. We're set to go. He's going to be your lawyer." (Tr. at 7.) Corder repeatedly raised the issue and the trial court ruled on the matter as trial began. Under the circumstances, we see no reason to find waiver because he failed to interrupt, contradict, and argue with the trial court's ruling once made.

{¶ 20} Though the State cites a number of cases in which we found that a defendant who had previously expressed dissatisfaction with his counsel had waived the issue by the time of trial, none of these cases are factually similar. In *State v. Davis*, a defendant sent a letter to the court expressing that he had problems with counsel. 10th Dist. No. 97APA08-1020, 1998 WL 25570, 1998 Ohio App. LEXIS 2210, *2 (May 19, 1998). However, after the letter was sent in that case, less than a week before trial, the defendant's attorney represented to the trial court that he and the client were no longer having problems and that the defendant wished him to remain as counsel. *Id.* at *2-3. In *State v. Scudder*, a defendant submitted vague letters objecting to his counsel, failed to file a motion to formalize the complaints even when invited to do so, and then was entirely silent on the issue at trial. 10th Dist. No. 91AP-506, 1192 WL 302432, 1192 Ohio App. LEXIS 5454, *50-53 (Oct. 20, 1992). In *State v. Grisson*, trial counsel raised the issue of the defendant's satisfaction with his performance in order to give the defendant a forum in which to make specific complaints if he had any. 10th Dist. No. 08AP-952, 2009-Ohio-5709, ¶ 4. The defendant remained silent and did not voice any specific objection to his counsel until 30 days after his conviction. *Id.* at ¶ 22. Under the circumstances, we found that the *Deal* inquiry was unnecessary. *Id.*

{¶ 21} Because the trial court did not make the required *Deal* inquiry in this case, we vacate Corder's convictions and remand his case to the trial court to make inquiry into Corder's complaints about his counsel. If Corder's complaints lack merit, the trial court may re-enter judgment on the previously rendered verdicts. *Deal* at 20. However, should they prove founded, a new trial on Counts 1 and 5 (if the prosecution elects to go forward) or discharge (if the prosecution does not so elect) are required. Corder's second assignment of error is sustained.

### B. First Assignment of Error – Whether the Trial Court Failed to Make the Necessary Findings Under R.C. 2929.14(C)(4) Prior to Imposing Consecutive Sentences

{¶ 22} We have sustained Corder's second assignment of error and remanded his case to the trial court to make the *Deal* inquiry on the record and either re-enter judgment on the previously rendered verdicts and re-impose sentence (providing a new opportunity to comply with R.C. 2929.14(C)(4)) or to find merit to Corder's complaints about counsel, appoint new counsel, and permit the prosecution to elect to retry the vacated counts. If the prosecution elects to retry and Corder is found guilty, the trial court would thereafter impose sentence on Corder and in doing so comply with R.C. 2929.14(C)(4). Should the prosecution elect not to retry Corder or should Corder be acquitted, the trial court would have no need to comply with R.C. 2929.14(C)(4). Thus, the question of whether the trial court sufficiently complied with R.C. 2929.14(C)(4) in sentencing Corder in this round of trial proceedings is rendered moot by our disposition of the second assignment of error.

{¶ 23} Corder's first assignment of error is moot and we consider it no further.

### C. Third Assignment of Error – Whether the Trial Court Erred in Allowing Opinion Testimony on What is Usual Behavior for Child Sexual Offense Victims Without Qualifying the Witness as an Expert

{¶ 24} Because we have sustained Corder's second assignment of error and remanded this case to the trial court for an inquiry that may result in a new trial, we find Corder's third assignment of error to be unripe at this time. *State ex rel. Elyria Foundry Co. v. Indus. Commn.*, 82 Ohio St.3d 88, 89 (1998). It may arise again if the trial court finds Corder's complaints unfounded and re-enters judgment on the previous verdicts, or if retrial is held, the detective testifies similarly, and Corder is convicted. But review of this assignment of error and its attendant issues is speculative based on our order to vacate Corder's sentence.

{¶ 25} Corder's third assignment of error has been rendered unripe and is not considered further at this time.

## IV. CONCLUSION

{¶ 26} Although Corder repeatedly expressed concerns about the lack of communication between himself and his counsel and did request new counsel, the trial court made no inquiry into Corder's concerns whatsoever. We therefore reverse and remand with instructions to the Franklin County Court of Common Pleas that the trial court

No. 17AP-24

shall conduct the *Deal* inquiry in regard to this case. If Corder's complaints prove unfounded, the trial court may re-enter judgment on the previously rendered verdicts. However, if the court finds that such complaints are well-taken, the court should conduct a new trial on Counts 1 and 5 (if the prosecution is willing to retry the case) or discharge Corder (if the prosecution is not willing). Corder's second assignment of error is sustained. This renders his first assignment of error moot, and his third assignment of error unripe and thus they are considered no further.

*Judgment reversed and
remanded with instructions.*

KLATT, J., concurs
SADLER, J., dissents.

SADLER, J., dissenting.

{¶ 27} Because at no time during the course of trial did appellant request new counsel or otherwise express dissatisfaction with counsel's representation, I would find that appellant waived the issue of whether the trial court had a duty to inquire under *State v. Deal*, 17 Ohio St.2d 17 (1969). Because the majority holds otherwise, I respectfully dissent.

{¶ 28} As stated in *Deal*, the duty of the trial court to inquire into trial counsel's representation of a defendant applies where an indigent defendant questions the effectiveness and adequacy of counsel "*during the course of his trial.*" (Emphasis added.) *Id.* at syllabus. This court has repeatedly found that a trial court does not violate a duty to inquire under *Deal* where a defendant who had previously expressed discontentment with his trial counsel does not raise the issue during the course of his trial.

{¶ 29} In *State v. Scudder*, 10th Dist. No. 91AP-506 (Oct. 20, 1992), we rejected the defendant's claim that his letter to the trial court one month prior to trial expressing dissatisfaction with his trial counsel implicated the trial court's duty to inquire under *Deal*. We distinguished *Deal* based on the defendant's failure to raise his allegations of incompetency of counsel at trial, noting "[i]t was incumbent upon defendant to do more to preserve his pretrial complaints for our review" and that, because his outward conduct at trial was inconsistent with his letter, "it would appear that he had later acquiesced in his defense counsel's handling of the matter at the time of trial." *Id.* We found it reasonable for the trial court to assume that "problems were resolved since no mention was made of them at trial." *Id.*

{¶ 30} Likewise in *State v. Davis*, 10th Dist. No. 97APA08-1021 (May 19, 1998), we found that the holding in *Scudder* applied in a case where the defendant sent a letter to the trial court one month prior to trial that we interpreted as a request for new counsel. While the facts of *Davis* included a pretrial meeting whereby trial counsel expressed an improved relationship with the defendant, our holding in *Davis* was specifically based on the defendant's failure "to preserve his objections by failing to timely raise his concerns with the trial court during the trial"—regardless of whether the trial court personally addressed the defendant at trial regarding this topic or not. *Id.*

{¶ 31} Consistent with *Scudder* and *Davis*, in *State v. Grisson*, 10th Dist. No. 08AP-952, 2009-Ohio-5709, ¶ 20-21, *appeal not allowed*, 124 Ohio St.3d 1493, 2010-Ohio-670, we found that comments made to the trial court prior to trial regarding the defendant's frustrations with the progress of the case did not trigger a *Deal* inquiry where immediately prior to trial the defendant did not make any complaints regarding his representation. *See also In re W.W.E.*, 10th Dist. No. 15AP-167, 2016-Ohio-4552, ¶ 44 (citing *Davis* and *Deal* in finding that the trial court did not err in failing to inquire of the appellant whether he wished for different counsel in a permanent custody hearing where the appellant did not request new counsel at the hearing).

{¶ 32} In this case, the majority sees "no reason to find waiver because [appellant] failed to interrupt, contradict, and argue with the trial court's ruling once made." (Majority Opinion at ¶ 19.) In my view, *Deal* and precedent of this court support the opposite view and stand for the proposition that a defendant waives the issue of trial court inquiry under *Deal* by not expressing, at trial, dissatisfaction with his counsel. Accordingly, because during the course of his trial, appellant did not request new counsel, otherwise object to the issue, or make any overture about the efficacy or adequacy of counsel's representation, I would not find that the trial court erred in failing to inquire about appellant's representation under *Deal* and would rather find that appellant waived the issue.

{¶ 33} Furthermore, because appellant failed to object at trial, I would find that on this record, he failed to demonstrate the trial court's lack of inquiry into his trial counsel representation affected the outcome of the trial under plain error review. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 108, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), and *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus ("An

No. 17AP-24

alleged error is plain error only if the error is 'obvious,' and 'but for the error, the outcome of the trial clearly would have been otherwise.' ").[3]

{¶ 34} For the foregoing reasons, I would overrule appellant's second assignment of error and proceed to address the third assignment of error.[4] Because the majority does not, I respectfully dissent.

―――――――――

[3] I find particularly noteworthy that, in this case, defense counsel's representation contributed to appellant being found not guilty of rape of a minor less than 13 years of age and two of the gross sexual imposition charges—three of the five of the charges brought against him.
[4] At oral argument, appellant's counsel withdrew appellant's first assignment of error.