**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Rahab,* Slip Opinion No. 2017-Ohio-1401.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-1401

THE STATE OF OHIO, APPELLEE, *v*. RAHAB, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Rahab,* Slip Opinion No. 2017-Ohio-1401.]**

*Criminal law—Sentencing—Right to trial by jury—Vindictiveness—There is no presumption of vindictiveness when, after trial, a trial court sentences a defendant to a longer prison term than was offered by the state in plea negotiations—An appellate court may reverse such a sentence for vindictiveness only if, after review of the entire record, it finds clearly and convincingly that the sentence was based on actual vindictiveness—Actual vindictiveness not found—Judgment affirmed.*

(No. 2015-1892—Submitted February 9, 2017—Decided April 18, 2017.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-150186.

_____

**DEWINE, J.**

{¶ 1} Malik Rahab turned down a plea deal that would have sent him to prison for three years. A jury found him guilty, and a judge sentenced him to six years in prison. This, he says, constituted an impermissible "trial tax"; in other words, the judge increased Rahab's sentence in retaliation for the exercise of his constitutional right to a jury trial. To support his claim, he points to comments made by the trial judge that he maintains should give rise to an inference that the court was acting vindictively.

{¶ 2} The First District Court of Appeals rejected Rahab's argument, concluding on the record before it that the trial court had based its sentence on the facts of the case and the defendant's prior history rather than on his decision to go to trial. We allowed Rahab's discretionary appeal. 145 Ohio St.3d 1407, 2016-Ohio-899, 46 N.E.3d 702.

{¶ 3} Resolution of this appeal turns on whether we adopt the presumption of vindictiveness urged by Rahab. We decline to do so: we hold that there is no presumption of vindictiveness when a defendant rejects a plea bargain and is subsequently sentenced to a harsher term. The burden is on the defendant to show the judge acted vindictively. And an appellate court may reverse a sentence for vindictiveness only if, upon its examination of the entire record, it clearly and convincingly finds the sentence was based on actual vindictiveness. Applying this standard, we do not find Rahab has demonstrated actual vindictiveness, and so we affirm the judgment below.

## I. A Rejected Plea, a Trial, and a Sentence

{¶ 4} Rahab was charged with burglary. Before his jury trial was to begin, the trial court asked about plea negotiations. The state recounted that it had offered Rahab a three-year agreed sentence if he would plead guilty as charged but that he had rejected the offer. The court confirmed with Rahab that he wanted to reject the plea offer, and the trial commenced.

**{¶ 5}** The burglary victim, Christina Hewitt, testified at trial. One morning—shortly after she and her husband had moved into their home—she noticed that a living-room window was open and her purse missing. Though a fingerprint lifted from the window matched Rahab's, he told the police that he had never been at the home. The jury found Rahab guilty. Following a sentencing hearing, the court imposed a six-year prison term.

**{¶ 6}** Rahab appealed, arguing that his sentence was contrary to law because the trial court had punished him for exercising his right to a jury trial rather than accepting the plea offer. In affirming, the court of appeals relied upon its decision in *State v. Stafford*, 158 Ohio App.3d 509, 2004-Ohio-3893, 817 N.E.2d 411, which held that a presumption of vindictiveness arises when a court involves itself in unsuccessful plea negotiations and then, following trial, sentences a defendant to a greater sentence than was offered. Acknowledging that the trial court had not involved itself in plea negotiations, the court concluded, "The record establishes that the trial court based Rahab's sentence on his personal history and the facts of the case * * * rather than as punishment for exercising his right to a jury trial."

## II. Proof of Vindictiveness

**{¶ 7}** Rahab argues that the trial court vindictively imposed a sentence in retaliation for the exercise of his right to a jury trial, in violation of his due-process rights under the United States Constitution.

**{¶ 8}** "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort * * *." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), citing *North Carolina v. Pearce*, 395 U.S. 711, 738, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (Black, J., concurring in part and dissenting in part). There is no question, then, that a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law. *See State v. O'Dell*, 45 Ohio St.3d 140, 147,

543 N.E.2d 1220 (1989). The more difficult question is how a defendant proves vindictiveness.

{¶ 9} Rahab seeks to relieve himself of the burden of proving that the trial court's sentence in his case amounted to a punishment for his decision to go to trial. He argues instead that the court's statements during sentencing gave rise to an inference that it sentenced him vindictively and that the inference could be rebutted only by "an unequivocal statement as to whether the decision to go to trial was or was not considered in fashioning the sentence," *see State v. Scalf*, 126 Ohio App.3d 614, 621, 710 N.E.2d 1206 (8th Dist.1998). Thus, he is asking this court to presume vindictiveness based on the court's statements. Amicus curiae the Ohio Association of Criminal Defense Lawyers would have us go even further and find that a presumption of vindictiveness arises whenever a court imposes a sentence that is harsher than was offered during plea negotiations. In its view, then, anything greater than a three-year sentence for Rahab would be presumptively contrary to law. But vindictiveness on the part of a sentencing judge has been presumed in only a narrow class of cases.

## A. The *Pearce* Presumption and its Limits

{¶ 10} The presumption that we are urged to apply has its underpinnings in the United States Supreme Court's decision in *Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. Ordinarily, appellate courts defer to trial courts' broad discretion in making sentencing decisions. *See Wasman v. United States*, 468 U.S. 559, 563-564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984); *see also Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The sentencing statute and case law reflect this deference. *See* R.C. 2953.08(G); *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23. *Pearce* marked a departure from the traditional rule. *See Wasman* at 564.

{¶ 11} In *Pearce*, the defendant had successfully appealed and then, upon retrial and conviction for the same offense, received a harsher sentence. The court

held that a presumption of vindictiveness arose when the judge imposed a more severe sentence after the second trial. *See Pearce* at 726. The presumption could be rebutted by affirmative, nonvindictive reasons for the sentence on the record. *Id.* "Due process of law," the court reasoned, "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725.

{¶ 12} *Pearce* may have appeared to herald "a rule of sweeping dimension." *Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). But the United States Supreme Court has sharply limited application of its " 'judicially created means of effectuating the rights secured by the [Constitution]' " (brackets sic) to a narrow set of cases—"where its '[remedial] objectives are thought most efficaciously served' " (brackets added). *Texas v. McCullough*, 475 U.S. 134, 138, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986), quoting *Stone v. Powell*, 428 U.S. 465, 482, 487, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). As that court has explained,

> The imposition of punishment is the very purpose of virtually all criminal proceedings. The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity. Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive. Given the severity of such a presumption, however—which may operate in the absence of any proof of an improper motive and thus may block a legitimate

response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

*United States v. Goodwin*, 457 U.S. 368, 372-373, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

{¶ 13} So narrow is the application of the *Pearce* presumption that it has been referred to as an "oddity" and "an anomaly in our law, which ordinarily ' "presum[es] * * * honesty and integrity in those serving as adjudicators." ' " (Ellipsis sic.) *Plumley v. Austin*, 135 S.Ct. 828, 190 L.Ed.2d 923 (2015) (Thomas, J., dissenting from denial of certiorari), quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 891, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009) (Roberts, C.J., dissenting), quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Thus, the United States Supreme Court has refused to extend the presumption to situations in which a defendant is sentenced more harshly after seeking a de novo trial with a superior court in a two-tier trial system, *Colten v. Kentucky*, 407 U.S. 104, 116-118, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); in which a jury resentences a defendant to a greater term of imprisonment following a retrial, *Chaffin v. Stynchcombe*, 412 U.S. 17, 26-28, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); and in which a prosecutor brings felony charges arising out of the same incident for which the defendant had refused a misdemeanor plea, *Goodwin* at 381-384.

{¶ 14} Nor has the United States Supreme Court applied the presumption to situations in which a harsher sentence is imposed after a defendant successfully moves to vacate his guilty plea and proceeds to trial. *Smith*, 490 U.S. at 801-802, 109 S.Ct. 2201, 104 L.Ed.2d 865. In determining whether to apply the presumption, the *Smith* court returned to considering whether there was a " 'reasonable likelihood' * * * that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Id.* at 799, quoting *Goodwin* at 373. In concluding that there was no such reasonable likelihood, the court

6

distinguished cases like *Pearce* in which the judge "can be expected to operate in the context of roughly the same sentencing considerations after the second trial as he does after the first." *Smith* at 802. In contrast, when the defendant has initially tendered a plea, more information bearing on sentencing will be available to the judge after trial. *Id.* at 801. For example, during the trial, the court may gain further insight into the crime itself and the defendant's "moral character and suitability for rehabilitation." *Id.*

{¶ 15} Further, the court noted that *Pearce* had been decided before "important developments in the constitutional law of guilty pleas." *Smith* at 802. Among these developments were the recognition that a "guilty plea may justify leniency," *id.*, citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), that a prosecutor may offer a more lenient sentence as part of the plea-bargaining process, *id.*, citing *Bordenkircher v. Hayes*, 434 U.S. at 363, 98 S.Ct. 663, 54 L.Ed.2d 604, and that a defendant may receive a more lenient sentence in return for a guilty plea, *id.*, citing *Corbitt v. New Jersey*, 439 U.S. 212, 221-223, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). "[A]fter trial," the court explained, "the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Smith* at 801.

**B. No Presumption of Vindictiveness Following Plea Negotiations**

{¶ 16} Guided by these United States Supreme Court decisions, we consider whether Rahab's case fits within the narrow band of cases in which vindictiveness is presumed. We conclude that it does not: there is not a reasonable likelihood that a sentence that is harsher than the one offered during plea negotiations is the product of actual vindictiveness. *See Smith*, 490 U.S. at 799, 109 S.Ct. 2201, 104 L.Ed.2d 865. As in *Smith*, a trial court that sentences a defendant following a jury trial—in a case in which there has not been a previous jury trial—has more information upon which to base its sentencing decision than does the court that imposes an agreed sentence arising out of plea negotiations.

**{¶ 17}** Furthermore, as the court made clear in *Smith*, there are legitimate reasons a defendant who rejects a plea may end up receiving a harsher sentence. Acceptance of responsibility is an appropriate sentencing consideration. *Id.* at 801. Moreover, a plea bargain is, after all, a bargain. In the bargain, the prosecutor achieves certain benefits: a foregoing of the risk that the defendant will be found not guilty, relief from the burden of trying the case and a concomitant ability to devote prosecutorial resources to other cases, and limitations on the defendant's right to appeal an agreed sentence, *see* R.C. 2953.08(D)(1). In return, the prosecutor is able to offer the defendant certain sentencing considerations. Both sides exchange risk about the outcome for an enhanced degree of certainty. For the bargain to be worth anything to the defendant (at least in most cases), the defendant must have a reasonable probability of receiving a more lenient sentence than he would following trial and conviction.

**{¶ 18}** Thus, when a defendant receives a harsher sentence following his rejection of a plea offer, there is not a "reasonable likelihood" that the sentence was based on actual vindictiveness. We decline to apply a presumption of vindictiveness, and instead hold that Rahab must prove actual vindictiveness. *See Wasman*, 468 U.S. at 569, 104 S.Ct. 3217, 82 L.Ed.2d 424.

### III. The Record as a Whole Does Not Clearly and Convincingly Show the Sentence was the Result of Actual Vindictiveness

**{¶ 19}** Having declined to presume that the trial court acted with vindictiveness, we begin our review of Rahab's sentence as we do in any other appeal—with the presumption that the trial court considered the appropriate sentencing criteria. *O'Dell*, 45 Ohio St.3d at 147, 543 N.E.2d 1220. We then review the entire record—the trial court's statements, the evidence adduced at trial, and the information presented during the sentencing hearing—to determine whether there is evidence of actual vindictiveness. We will reverse the sentence only if we clearly and convincingly find the sentence is contrary to law because it

was imposed as a result of actual vindictiveness on the part of the trial court. *See* R.C. 2953.08(G)(2); *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶ 20} Rahab insists that even before the trial started, the court's statements indicated that it was bothered by his decision to go to trial:

> Sir, you understand that the State is offering to do an agreed sentence of three years in prison. The charge that you're facing now, sir, carries a potential sentence of 2 to 8. There's the presumption that you go to prison, okay? And if you didn't take the agreed sentence and you were found guilty, it would be up to the Court to sentence you. And the Court does not look highly on cases where people don't take responsibility and accept that they did something wrong if they're found guilty.
>
> You understand that? Meaning it probably would be more. I'm not going to fool you. You understand?

{¶ 21} As Rahab sees it, the court's words constituted a threat—one that it carried out when it imposed a sentence harsher than the state's offer. We disagree. Rather than threatening Rahab with more time in prison should he exercise his right to a jury trial, the court was ensuring that he understood the choice he was making. Rahab was charged with a second-degree felony, R.C. 2911.12(A)(2) and (D), for which there is a presumption of a prison term of two, three, four, five, six, seven, or eight years, R.C. 2929.13(D)(1) and 2929.14(A)(2). The three-year term offered by the state in its plea bargain was at the low end of the range of seven possible terms. Indeed, the only way that he could have received a lesser sentence is if the court had imposed the minimum term. The court's statements allowed Rahab to intelligently evaluate whether he wanted to risk the possibility of a greater sentence.

{¶ 22} Nevertheless, Rahab maintains that the court's statements following the trial betray a vindictive motive. At the sentencing hearing, the trial court referred to a letter that Rahab had written in which he claimed that he had wanted to admit to the crime all along and that he had gone to trial only because his attorney made him. The court expressed its confusion with Rahab's claim and asked why he had not then accepted the plea agreement offered by the state. Rahab answered, "I didn't think it was worth what I did, three years."

{¶ 23} The trial court was troubled by Rahab's response:

Eight years. I told you that when they offered you three. So, you know, I'm a little perplexed that you're saying you didn't think three was fair and you're telling me that your attorney made you go to trial. And now you're telling me that you did it. You did it, didn't you, right?

When Rahab agreed that he had committed the burglary, the court continued,

Okay. So I don't understand why you wouldn't admit to that and plead to that, and you had to have a trial, or why you wouldn't take the three years because I can sentence you to eight.

Makes no sense to me. So I don't know what you talked about with your attorney, but—too late. You went to trial. You gambled, you lost. You had no defense. And you even admit that you did it, and yet you put this woman through this trial again.

You traumatized her by breaking into her house. And then you had to traumatize her again to relive it and go to trial. I don't get it.

{¶ 24} The court expressed skepticism about Rahab's claim that he had told his attorney that he did not want to go to trial, reminding Rahab that it was his choice to go to trial. When Rahab said he was sorry, the court told him, "I sure wish I would have heard that before the trial."

{¶ 25} And when Rahab's brother addressed the court about his difficult upbringing and suggested that Rahab did not deserve an eight-year sentence simply because he had made a bad decision, the court again emphasized that it was discounting Rahab's remorse:

> He went to the trial with a prove-it defense. He had absolutely no defense. They had his fingerprints. He gambled, he lost. I'm sorry, you know right from wrong, but it just does not— it's like, yeah, now that it's all over, oh, I'm sorry I got caught, I'm sorry I got—I went to trial and I lost. Too late. Too late. To me, too late.

{¶ 26} The court returned to its gambling theme one more time before announcing the sentence:

> Well, guess what, you lost your gambling. You did this. You had no defense, and you wouldn't take responsibility. You wanted to go to trial. All right, big winner you are.

{¶ 27} The court's intemperate statements are troubling. No court should give the appearance that it is chiding a defendant for exercising his constitutional right to a jury trial. But the statements can't be read in isolation. Rather, we must review the entire record.

**{¶ 28}** True, the court refers to Rahab gambling and losing when he chose to reject the plea offer and go to trial. But when read in the context of the sentencing hearing, it seems likely that the court was not taking Rahab to task for going to trial but rather for acting contrite and admitting his crime only after he had been found guilty. Genuine remorse is one factor to be considered by the court when it makes its sentencing decision. *See* R.C. 2929.12(D)(5). More concerning was the court's statement that Rahab had put the victim through the trauma of a trial. The sentencing court is to consider how the defendant's criminal conduct—not his exercise of constitutional rights—impacted the victim. *See* R.C. 2929.11(B).

**{¶ 29}** But the court had information beyond the victim's trauma to consider before imposing sentence. Rahab's case manager from a drug-treatment program told the court that Rahab had not fared well in treatment. Rahab had started and quit several jobs, against the advice of the program's employees. Rahab was "difficult" to work with and "noncompliant in a lot of different areas." Due to Rahab's problems in treatment and his burglary conviction, the case manager explained that Rahab could not remain in the program.

**{¶ 30}** Further, the assistant prosecuting attorney disclosed that Rahab, who was 19 at the time of sentencing, had been adjudicated delinquent on 22 occasions as a juvenile. One of the adjudications was for robbery.

**{¶ 31}** Not all the information considered by the court was adverse to Rahab. The court's discussion of Rahab's childhood with his brother had an impact: the court told Rahab that it had been persuaded by his brother's comments to impose less than the eight-year maximum sentence.

**{¶ 32}** In short, the trial court had a great deal of information to consider before it imposed the sentence—Rahab's lack of genuine remorse, the impact of his conduct on the victim, his poor performance in treatment, his lengthy juvenile record, and his difficult upbringing. No doubt it would have been better had the court's words not hinted at a frustration with Rahab's rejection of the plea bargain.

But given the record before us, we are not convinced that the court sentenced Rahab based on vindictiveness, rather than on the evidence of his prior record, insincere remorse, and the impact of his crime on the victim. Accordingly, we affirm the judgment of the court of appeals.

## IV. Conclusion

{¶ 33} We hold that there is no presumption of vindictiveness when, after trial, a court sentences a defendant to a longer term than was offered by the state in plea negotiations. An appellate court may reverse a sentence for vindictiveness only if, after review of the entire record, it finds clearly and convincingly that the sentence was based on actual vindictiveness. Having reviewed the record in this case, we do not find that the court vindictively sentenced Rahab. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

FRENCH, J., concurs.

O'CONNOR, C.J., and O'DONNELL and KENNEDY, JJ., concur in judgment only.

HOOVER, J., concurs in part and dissents in part, with an opinion joined by O'NEILL, J.

MARIE MORALEJA HOOVER, J., of the Fourth District Court of Appeals, sitting for FISCHER, J.

_____

**HOOVER, J., concurring in part and dissenting in part.**

{¶ 34} I concur in the majority's holding that there is no presumption of vindictiveness on the part of the trial court when a defendant rejects a plea bargain and is subsequently sentenced to a harsher term. I also agree with the majority that an appellate court may reverse a sentence for vindictiveness only if, upon its examination of the entire record, it clearly and convincingly finds that the sentence was based on actual vindictiveness. Nonetheless, I write separately because I find

that the record in this case clearly and convincingly demonstrates that the trial court sentenced Rahab vindictively. Accordingly, I would reverse the judgment of the First District Court of Appeals.

{¶ 35} It has long been recognized that a defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter a plea agreement. *State v. O'Dell*, 45 Ohio St.3d 140, 543 N.E.2d 1220 (1989), paragraph two of the syllabus. Any increase in the sentence based upon the "defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper" and violates the right to due process. *State v. Scalf*, 126 Ohio App.3d 614, 620-621, 710 N.E.2d 1206 (8th Dist.1998); *see also United States v. Stockwell*, 472 F.2d 1186, 1187-1188 (9th Cir.1973) (a sentence based on a defendant's refusal to accept a plea bargain, even if only in part, infringes upon the defendant's right to trial). A trial court cannot enhance a sentence because a defendant elects to require the government to prove his guilt, " 'no matter how overwhelming the evidence of [defendant's] guilt.' " (Brackets sic.) *Scalf* at 621, quoting *United States v. Derrick*, 519 F.2d 1, 3 (6th Cir.1975).

{¶ 36} The majority concludes that Rahab's sentence was not based on vindictiveness but rather on the evidence of his prior record, his perceived lack of remorse, and the impact of his crime on the victim. I disagree with the majority's evaluation of the evidence contained in the record.

{¶ 37} As discussed in the majority opinion, the record is replete with "intemperate statements" from the trial court. Majority opinion at ¶ 27. These statements concern the trial court's dissatisfaction with Rahab's choice to exercise his right to a jury trial and cannot simply be ignored.

{¶ 38} Of particular concern are the trial court's remarks made prior to trial. At that time, the trial court had not yet had the benefit of hearing evidence, nor did it know of Rahab's prior criminal history or apparent lack of remorse; yet it had already determined that Rahab would receive a harsher sentence if he rejected the

14

state's offer and exercised his right to a jury trial. The majority contends that this remark was an attempt by the trial court to ensure that Rahab understood the choice that he was making by rejecting the state's offer. I respectfully disagree. Rather, I interpret the trial court's remark as a threat to Rahab: either take the plea bargain offered by the state and forego your right to a trial or suffer a longer sentence upon a finding of guilt by the jury. Couple this remark with the trial court's statements at sentencing, which repeatedly mention Rahab's rejection of the plea bargain and his decision to "gamble" and go to trial, and I think it is effusively clear that the trial court acted vindictively when it sentenced Rahab. Nothing in the entire record convinces me otherwise.

{¶ 39} The majority's conclusion that the trial court did not act vindictively in this case creates a nearly impenetrable barrier to proving actual vindictiveness. If the trial court's actions in this case do not amount to vindictiveness, then what behavior would satisfy that burden? The majority's decision, in my view, may have a chilling effect on the willingness of criminal defendants to exercise their constitutional rights to trial.

{¶ 40} For the foregoing reasons, I dissent from the majority's finding that Rahab has not demonstrated actual vindictiveness. As previously stated, however, I otherwise concur in the majority's decision.

O'NEILL, J., concurs in the foregoing opinion.

_____

Raymond T. Faller, Hamilton County Public Defender, and Demetra Stamatakos and Joshua Thompson, Assistant Public Defenders, for appellant.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee.

Repper, Pagan & Cook, Ltd., and Christopher J. Pagan, urging reversal for amicus curiae the Ohio Association of Criminal Defense Lawyers.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Peter T. Reed, Deputy Solicitor, urging affirmance for amicus curiae Ohio Attorney General Michael DeWine.

_____