[Cite as *State v. Satchel*, **2018-Ohio-623**.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY


State of Ohio                                    Court of Appeals No. S-17-011

     Appellee                           Trial Court No. 15 CR 455

v.

Omar Hassen Satchel                       **DECISION AND JUDGMENT**

     Appellant                           Decided:  February 16, 2018

* * * * *

Julia R. Bates and Alyssa Breyman, Special Prosecutors, for appellee.

Brett A. Klimkowsky, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Appellant, Omar Satchel, appeals the March 23, 2016 judgment of the Sandusky County Court of Common Pleas sentencing him to 36 months in prison. Because Satchel's sentence is not contrary to law, we affirm.

## I. Background and Facts

{¶ 2} On May 21, 2015, Satchel was indicted on one count of grand theft in violation of R.C. 2913.02(A)(1) and one count of possessing a firearm while under a disability in violation of R.C. 2923.13(A)(2), both third-degree felonies. The indictment alleges that, on April 4, 2015, Satchel stole and possessed a Cobra .380 caliber handgun belonging to Margaret Sims.

{¶ 3} The possessing a firearm while under a disability charge was tried to a jury on March 22, 2016.[1] There was pretrial publicity in Sandusky County related to Satchel, the gun he allegedly possessed in this case, and an ongoing homicide investigation. As a result, the court and counsel conducted individual voir dire of the prospective jurors who had seen something about Satchel or this case in the media. This resulted in extended voir dire of 12 prospective jurors, five of whom were ultimately excused for cause. Nevertheless, the trial court was able to seat a panel of 12 jurors and one alternate.

{¶ 4} The state's first witness was Diane Tiseo, a parole agent for the Michigan Department of Corrections. She testified that Satchel has been on parole in Michigan since December 2010, and that she is his parole officer. The state admitted into evidence certified copies of Satchel's Michigan convictions and sentence. Tiseo confirmed that Satchel was placed on parole following his prison term for home invasion and domestic violence convictions in 2008.

---

[1] The state dismissed the grand theft charge following opening statements.

2.

**{¶ 5}** As part of her parole orientation with Satchel, Tiseo explained Michigan's zero-tolerance weapons policy, which prohibits a convicted felon from using or possessing any gun or imitation gun and any ammunition. The policy also prohibits a convicted felon from knowingly being in the company of a person who possesses a weapon. Satchel signed and received a copy of Michigan's conditions of parole, which included the weapons policy. Tiseo said that Satchel stopped reporting to her in January 2014. As a result, Tiseo placed him on absconder status and issued a warrant for his arrest.

**{¶ 6}** The state's next witness was Lawrence Shields. He testified that he sold a working .380 caliber Cobra handgun and some .380 ammunition to Margaret Sims in February 2015. He identified state's exhibit J—a box for a Cobra .380 handgun and a box of .380 bullets—as the items that he sold to Sims.

**{¶ 7}** On cross, Shields identified two receipts that he created when he sold handguns to Sims. Both were for Cobra .32 caliber handguns. One was sold in June 2014 and the other in January 2015. On redirect, Shields clarified that the January 2015 receipt contained a typographical error; he had, in fact, sold Sims a .380 handgun, not a .32. He also agreed that he sold the .380 handgun to Sims in January 2015, not February 2015.

**{¶ 8}** Sims was the state's third witness. She testified that she purchased a Cobra .380 caliber handgun from Shields in January 2015. She identified the box the gun came

3.

in and the box of ammunition in state's exhibit J as the items that she purchased from Shields. She kept the gun and bullets in the drawer of the dresser in her bedroom.

{¶ 9} Sims said that she had known Satchel for approximately a year-and-a-half and he occasionally lived with her. Satchel was living with Sims in early April 2015, when they took a trip to Detroit.

{¶ 10} At some point between January and April 2015, Sims showed Satchel the .380 handgun. She said that he looked at it and handed it back to her. She also testified about a time when she picked up Satchel's coat when he was not around. She noticed that the coat was heavier than normal and found the gun in the pocket. She took the gun out of the coat and put it back in the box in her dresser drawer.

{¶ 11} In late April or early May 2015, Detective Sean O'Connell of the Sandusky County Sheriff's Office came to Sims's home to ask her about the .380 handgun. Sims already knew that the gun was missing, but she showed O'Connell the gun box and bullets in her dresser drawer. Sims was unsure when the gun had been taken and did not know who had taken it. Even so, she did not report it stolen.

{¶ 12} On cross-examination, Sims testified that she was not absolutely sure about the caliber of the guns she purchased from Shields. She agreed that the receipt Shields prepared in January 2015 said that she purchased a .32 caliber handgun and that the box the gun came in said it was a .380 caliber handgun.

4.

{¶ 13} When asked about the trip to Detroit, Sims said that she did not recall Satchel having possession of the gun that day and did not think that the gun came to Detroit with her and Satchel.

{¶ 14} Sims confirmed that she did not know when the gun had disappeared and did not know what happened to the gun. She claimed that any number of people could have entered her house and taken the gun because there are four to six people who have copies of her house key.

{¶ 15} Finally, the state called O'Connell. He testified that he was investigating a homicide case in 2015 and had information that Satchel might have had the gun involved in the murder. He went to Sims's house on May 4, 2015, to ask about the gun, which Sims admitted to owning. She took O'Connell to her bedroom where she kept the gun, but when she opened the gun box, the gun was not in it. He identified the box of .380 ammunition and the empty Cobra .380 handgun box in state's exhibit J as the items he took from Sims's home on May 4.

{¶ 16} On May 5, 2015, Satchel was arrested. O'Connell interviewed him while he was in custody. During the interview, Satchel admitted to taking the Cobra .380 handgun from Sims on April 4 and selling it to someone on the street during their trip to Detroit a day or two later.

{¶ 17} On cross, O'Connell admitted that he was not investigating Satchel for a weapons under disability violation in May 2015. Rather, he was conducting a murder investigation. O'Connell believed that Sims's .380 caliber handgun had been used in a

5.

murder and he went to her house looking for a murder weapon. O'Connell did not find the gun at Sims's house, nor had he found it at the time of the trial. He said that the investigation of the murder case (including the whereabouts of the gun) was ongoing. O'Connell agreed that Satchel was cooperative with the investigation and freely provided his fingerprints, a DNA sample, and his cellphone to O'Connell.

{¶ 18} O'Connell also admitted that he did not find a witness who placed the missing gun in Satchel's hand on April 4. In fact, the only evidence that Satchel ever possessed the gun on April 4 was Satchel's statement during his interview with O'Connell.

{¶ 19} After hearing the testimony, the jury convicted Satchel of possessing a firearm while under a disability. The court immediately proceeded to sentencing. After hearing from counsel and Satchel, the court made the following statements:

> I believe that the jury made a proper decision. I don't see a great mystery here. By your own confession admitted possession of the gun and admitted or—and through the testimony of Margaret, you—you clearly knew where the gun was located. It came up missing, and—and then by your testimony through the interrogation admitted that you took it and you sold it conveniently some time before April 9th.

> We took 40 people off the street to come and hear your case. I think that all I can judge you on is your—your history and conduct in this case, and I think the appropriate punishment is you clearly knew that guns were

6.

off limits, and you put yourself in possession of one, so I would impose the maximum sentence, which is three years prison.

**{¶ 20}** Satchel objects to his sentence, raising one assignment of error:

Whether the Trial Court erred by imposing an unconstitutional trial tax on Appellant at the time of sentencing for Appellant having exercised Appellant's constitutional right to a jury trial.

## II.  Law and Analysis

**{¶ 21}** In Satchel's assignment of error, he argues that the trial court violated his due process rights by imposing a "trial tax" on him.  That is, Satchel contends that the trial court sentenced him more harshly than it would have if he had not exercised his right to a jury trial.  The state counters that Satchel's sentence is lawful because he fails to show that the trial court acted with actual vindictiveness.

**{¶ 22}** We review sentencing challenges under R.C. 2953.08(G)(2).  The statute allows an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.  R.C. 2953.08(G)(2).

{¶ 23} We note that Satchel does not challenge the trial court's compliance with any of the sentencing statutes in R.C. 2953.08(G)(2)(a). Rather, he claims that the trial court's sentence is contrary to law because the trial court punished him for exercising his right to a jury trial. This argument is without merit.

{¶ 24} "[A] sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 8. To determine whether the trial court acted with vindictiveness when it sentenced the defendant, we review the entire record—including the court's statements, the evidence presented at trial, and the information presented at sentencing—to see if there is evidence of actual vindictiveness. *Id.* at ¶ 19. "We will reverse the sentence only if we clearly and convincingly find the sentence is contrary to law because it was imposed as a result of actual vindictiveness on the part of the trial court." *Id.* An "intemperate" statement that gives the "appearance that [the trial court] is chiding a defendant for exercising his constitutional right to a jury trial"—without more—is not evidence of actual vindictiveness. *See id.* at ¶ 27.

{¶ 25} The entire basis of Satchel's argument is the trial court's statement that "[w]e took 40 people off the street to come and hear your case." He characterizes this as evidence that the court was "obviously frustrated that its time was being wasted despite the existence of the confession * * *." He claims that the statement, when combined with the trial court's immediate sentencing and failure to order a presentence investigation, "unequivocally demonstrates" that the court considered Satchel's exercise of his right to a

8.

jury trial when it decided what sentence to impose on Satchel. Although we believe that the trial court's statement was inappropriate, when read in context and in conjunction with the rest of the trial and sentencing hearing, we do not believe that this isolated comment shows actual vindictiveness.

{¶ 26} The record shows that the trial court had before it evidence of Satchel's criminal history, his confession that he took Sims's gun and sold it in Detroit, and his failure to report to his Michigan parole officer after January 2014. The trial court evidently took all of this into consideration when it determined that three years was the appropriate punishment for Satchel's conduct. Moreover, the trial court was not required to postpone the sentencing or order a presentence investigation. R.C. 2947.06(A)(1) ("The court shall determine whether sentence should immediately be imposed. The court on its own motion *may* direct the department of probation * * * to make any inquiries and presentence investigation reports that the court requires concerning the defendant.") (Emphasis added.); *State v. Tunison*, 6th Dist. Wood No. WD-13-046, 2014-Ohio-2692, ¶ 17, quoting *State v. Adams*, 37 Ohio St.3d 295, 525 N.E.2d 1361 (1988), paragraph four of the syllabus ("'The decision to order a presentence report lies within the sound discretion of the trial court.'"). Based on our review of the record, we do not find clear and convincing evidence that the trial court sentenced Satchel out of actual vindictiveness. We therefore find that Satchel's sentence is not contrary to law, and his assignment of error is not well-taken.

9.

### III.  Conclusion

**{¶ 27}** Based on the foregoing, the March 23, 2016 judgment of the Sandusky County Court of Common Pleas is affirmed.  Satchel is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                     _____
                                             JUDGE

Thomas J. Osowik, J.               

                                         _____
Christine E. Mayle, P.J.                      JUDGE
CONCUR.

                                         _____
                                             JUDGE

10.