[Cite as *State v. Bradley*, 2019-Ohio-4272.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2018CA00172 |
| TYWON BRADLEY | |
| Defendant-Appellant | O P I N IO N |


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of Common Pleas, Case No. 2018CR1306 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 15, 2019 |

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Stark County Prosecutor

RONALD MARK CALDWELL
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South, Suite #510
Canton, Ohio  44702-1413

For Defendant-Appellant

AARON KOVALCHIK
116 Cleveland Avenue, N.W.
808 Courtyard Centre
Canton, Ohio  44702

*Hoffman, P.J.*

{¶1}   Defendant-appellant Tywon Bradley appeals his convictions and sentence entered by the Stark County Court of Common Pleas, on four counts of felonious assault with attendant firearm and repeat violent offender specifications; one count of improper discharge of a firearm at or into a habitation; one count of discharge of a firearm on or near a prohibited premises; one count of having weapons while under disability; and one count of domestic violence, following a jury trial.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   On July 25, 2018, the Stark County Grand Jury indicted Appellant with four counts of felonious assault, in violation of R.C. 2903.11(A)(2), with firearm and repeat violent offender specifications, felonies of the second degree; one count of improperly discharging a firearm at or into a habitation or in a school safety zone, in violation of R.C. 2923.161(A)(1), a felony of the second degree; one count of discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3)(C)(2), a felony of the third degree; one count of having weapons while under a disability, in violation of R.C. 2923.13(A)(2), a felony of the third degree; one count of assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree[1]; and one count of domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree.  Appellant appeared before the trial court for arraignment on July 27, 2018, and entered a plea of not guilty to the Indictment.

{¶3}   On the day of trial, prior to voir dire, the trial court addressed Appellant to ensure he had received the state's offer of a recommended sentence of eleven years in

---

[1] The state dismissed the assault charge prior to trial.

exchange for his guilty plea. The trial court added, "And the reason that I want to make sure that you understand the offer is because there are a lot of charges against you, and there are some serious charges that are involved which could lead to a rather large prison term. I want to make sure that you had the time to view the offer in light of what I would call the worst case scenario. * * * the worst case scenario would be that you'd be convicted of all of these charges, including all the specifications that go with it, and that the Court made the findings to give you the maximum penalty on each one. * * * I'm not telling you that that's what will happen if you go to trial. I just want to make sure you know the worst possible outcome that could be." Trial Tr., Vol. I at 14-15. Appellant advised the trial court he did not want the state's offer.

{¶4} Sherry Marshall testified she and Appellant dated for four years, and during that time, they lived together at 1110 7th Street, Canton, Stark County, Ohio. Marshall stated she and Appellant broke up in March, 2018. She recalled, on June 24, 2018, she and Appellant decided to get together. Marshall picked up Appellant between 5:30 and 6:00 p.m. They purchased beer and proceeded to the home of Spring Strader. A group of people were gathered at Strader's home for a party.

{¶5} Later that evening, Marshall, Appellant, and Marshall's son, Ernie Marshall, left the party together. Marshall stated Appellant had been drinking and "was pretty lit". Tr. at 171. Marshall dropped off her son, and she and Appellant returned to her residence to eat. Marshall had to rouse Appellant who was "passed out in the car". Tr. at 173. Once inside, Marshall began to list food options to Appellant. Appellant looked inside the refrigerator and the freezer, slamming the doors when he did not find anything to satisfy his appetite. Appellant slammed the refrigerator door so hard the items on top fell off.

Marshall screamed at Appellant not to break her new refrigerator.  Appellant, yelling at Marshall for spitting on him, lunged toward her, grabbed her by the throat, and shoved her against the wall.

{¶6}    Marshall was eventually able to break free from Appellant's grasp.  She grabbed her keys and purse, and ran out the door.  Marshall returned to Strader's residence.  She explained she did not call the police because she "still loved him and didn't want him to go to jail." Tr. at 175.  Marshall did call her son, Ernie, and told him what had occurred.  Ernie instructed Marshall to come pick him up.  During this time, Appellant repeatedly texted Marshall, calling her names and demanding she take him to his cousin's house.  Marshall ignored him.  When Marshall and Ernie returned to Marshall's residence, Appellant was standing outside on the steps.  Marshall and Ernie exited the vehicle.  A physical altercation ensued between Ernie and Appellant.  After Ernie "got the better of him", Appellant took off.  Marshall locked up her home, and she and Ernie returned to Strader's residence.

{¶7}    While Marshall, Strader, and Brittany were on the porch, a white SUV drove into the area and parked.  Ernie, who had been inside, came out onto the porch.  A man exited the back passenger side of the vehicle.  As the individual approached, the group realized it was Appellant. Ernie jumped off the porch, prepared to fight.  Strader started screaming, "He has a gun.  Run, he has a gun." Tr. at 183.  Strader, Ernie, and Brittany turned and ran toward the house.  Marshall remained outside, frozen in her disbelief Appellant would do anything.  As Strader ran into the house, she fell. Marshall believed her friend had been shot and ran.  Marshall heard four or five gunshots.  The adults

herded the children into the basement and called 9-1-1. When the police arrived, the officers instructed everyone to stay inside.

{¶8} Ernest "Ernie" Marshall and Spring Strader corroborated Marshall's testimony.

{¶9} Canton Police Officer Kyle Slone testified he was working the afternoon shift[2] on June 24, 2018, when he and his partner received "shots fired" alerts on their cell phones. The officers responded to the residence at 914 9th Street, Canton. Officer Slone spoke with Marshall and Ernie and learned Appellant was the alleged perpetrator. Officer Andrew Moore arrived at the scene and advised Officer Slone he was handling the call. Thereafter, Officer Slone searched the roadway for gun casings. He found five casings.

{¶10} Officer Andrew Moore testified he was working the midnight shift[3] on June 24, 2018. Shortly after roll call, he and Officer Sens were dispatched to the 900 block of 9th Street, Northwest, Canton, in response to shots fired. Officer Moore spoke with Marshall who recalled the events of the evening prior, including the shooting. Officer Moore indicated officers were unable to locate Appellant that evening.

{¶11} Detective Michael Walker of the Canton Police Department became involved in the case on July 12, 2018. Det. Walker interviewed Marshall and Strader on July 13, 2018. He subsequently interviewed Ernie Marshall on July 24, 2018. Det. Walker and Det. Jeff Weller went to the scene to recover any additional evidence. The detectives found three bullet markings on the porch of the residence.

---

[2] Officer Slone testified the afternoon shift is either 2 p.m. to 10 p.m. or 3 p.m. to 11 p.m.
[3] Officer Moore testified the midnight shift is either 10 p.m. to 6 a.m. or 11 p.m. to 7 a.m.

{¶12} Larry Mackey, II, with the Stark County Crime Lab received five spent cartridge casings recovered at the scene. He analyzed the casings and determined all of the casings were fired from the same gun.

{¶13} Appellant testified on his own behalf. Appellant candidly admitted he had been convicted of a number of felonies and served time in prison as a result. Appellant stated he had dated and lived with Marshall, but they broke up in March, 2018. He recalled he spent the night with Marshall on June 23, 2018. They spend part of the day of June 24, 2018, together, but he went to his cousin's house around 2 p.m.

{¶14} Appellant returned to Marshall's residence later that day. Marshall became angry with Appellant because his phone "kept going off." The two exchanged words and Marshall "stormed out." Appellant called for a ride. While he was waiting outside, Ernie arrived "with one of his peoples." Appellant and Ernie began to fight, but quickly went their separate ways. Thereafter, Appellant walked to his cousin's residence. It was between 6:45 p.m. and 7:00 p.m. when he arrived. Appellant played a game and watched a movie. He took a bath between 9:45 p.m. and 10:00 p.m. then went to bed as he had to work the next morning. Appellant denied being at Strader's house on June 24, 2018. Appellant indicated he did not fire a gun that day.

{¶15} On cross-examination, Appellant stated he did not call or text Marshall after he left her. Appellant also claimed Marshall was "a great actress." Tr. Vol. II at 359. Appellant added Ernie and Strader lied during their testimony.

{¶16} After hearing all the evidence and deliberating, the jury found Appellant guilty of four counts of felonious assault and the attendant firearm specifications, one count of improperly discharging a firearm at or into a habitation or in a school safety zone,

one count of discharge of a firearm on or near prohibited premises, one count of having weapons while under a disability, and one count of domestic violence. The trial court found Appellant guilty of the four repeat violent offender specifications which accompanied the felonious assault charges. The trial court conducted a sentencing hearing on October 25, 2018, and imposed an aggregate prison term of 32 years.

{¶17} It is from his convictions and sentence Appellant appeals, raising the following assignments of error:


I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

II. APPELLANT'S PRISON SENTENCE WAS AN UNCONSTITUTIONAL TRIAL PENALTY.


I.

{¶18} In his first assignment of error, Appellant challenges his convictions as against the manifest weight and based upon insufficient evidence.

{¶19} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶20} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶21} In his Brief to this Court, Appellant "states that he did not commit these crimes." Brief of Appellant at 10. In support of his position, Appellant refers to his testimony at trial during which he denied he ever visited Strader's residence on June 24, 2018, and never had a gun or fired a gun. Appellant also contends Marshall, Ernie, and Strader were not credible witnesses. Appellant explains Marshall wanted to get even with him because he did not wish to "reengage in a romantic relationship" with her. He adds Ernie and Strader were not credible due to their close relationships with Marshall. Appellant further submits the forensic evidence did not link the shell casings found at the scene to him.

{¶22} The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State* v. *McGregor,* 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 294299. The jury clearly did not believe Appellant's testimony.

{¶23} Upon review of the entire record, including reading the entire transcript, we find Appellant's convictions were not against the manifest weight of the evidence and were based upon sufficient evidence. Marshall, Ernie, and Strader all testified Appellant returned to Strader's residence with a gun, and all three heard four or five shots fired as

they fled into the home.    Officer Slone located five empty shell casings from the area where Appellant was seen approaching Strader's residence.

**{¶24}** Appellant's first assignment of error is overruled.

II.

**{¶25}** In his second assignment of error, Appellant argues his prison term was an unconstitutional trial penalty.  We disagree.

**{¶26}** It is well-established "a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." *State v. Rahab,* 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 8, citing *State v. O'Dell,* 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989).  When reviewing a sentence for vindictiveness, we begin by presuming the trial court considered the proper sentencing criteria. *Id.* at ¶ 19. We then review the record for evidence of actual vindictiveness. *Id.* "We will reverse the sentence only if we clearly and convincingly find the sentence is contrary to law because it was imposed as a result of actual vindictiveness on the part of the trial court." *Id.*, citing R.C. 2953.08(G)(2) and *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 1.  It is incumbent upon the defendant to prove actual vindictiveness. *Id.* at ¶ 18, citing *United States v. Wasman*, 468 U.S. 559, 569, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).

**{¶27}** As stated, supra, we have reviewed the entire record - the trial court's statements, the evidence adduced at trial, and the information presented during the sentencing hearing – and find no evidence of actual vindictiveness on the part of the trial court.  In sentencing Appellant, the trial court properly considered the principles and

purposes of sentencing in R.C. 2929.11 as well as the recidivism and seriousness factors in R.C. 2929.12.

{¶28} Accordingly, we find that Appellant's sentence is not contrary to law, and his second assignment of error is not well-taken and is overruled.

{¶29} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur