[Cite as *State v. Black*, 2019-Ohio-5017.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | | C.A. No. 19AP0013 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DESIREE BLACK | | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No. 2018 CR-B 001433 |

DECISION AND JOURNAL ENTRY

Dated: December 9, 2019

HENSAL, Judge.

{¶1} Desiree Black appeals her convictions and sentences from the Wayne County Municipal Court. For the following reasons, this Court affirms.

I.

{¶2} According to Paul Lewis, Ms. Black pushed him into a lake while he was fishing from a dock, causing him to lose his father's fishing rod and a reel he had recently purchased. He had to leave to pickup his girlfriend, but they returned to the lake in swimsuits later in the day prepared to search for the missing gear. When they got back to the lake, they learned that Ms. Black had found the rod and reel while they were gone. He asked for it back, but she refused to return it to him. The next day, Mr. Lewis's father went to Ms. Black's home and got his rod back, but Ms. Black refused to return the reel. After Mr. Lewis filed a police report, Ms. Black was charged with disorderly conduct, unauthorized use of property, and petty theft. A jury found

her guilty of the disorderly conduct and petty theft offenses, and the trial court sentenced her to 30 days in jail. Ms. Black has appealed, assigning two errors.

## II.

## ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶3} Ms. Black argues that her theft conviction was not supported by sufficient evidence and is against the manifest weight of the evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶4} If a defendant asserts that her conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side.

*Thompkins* at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶5} The jury found Ms. Black guilty of violating Revised Code Section 2913.02(A)(1). That section provides that "[n]o person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent." R.C. 2913.02(A)(1).

{¶6} Regarding the sufficiency of the evidence, Ms. Black argues that there was no evidence that she acted purposely. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). Ms. Black argues that she had been friends with Mr. Lewis for many years and that it makes no sense that she would return the fishing rod to his father while keeping the reel.

{¶7} According to Mr. Lewis, when he returned to the lake with his girlfriend, Ms. Black and her fiancé showed them the rod and reel that Ms. Black had retrieved from the lake but told him that they were not going to give it back. Instead, they loaded it into their van and threatened to fight him, so he left. According to Mr. Lewis's girlfriend, she was near Ms. Black's van at a point during the altercation and saw the fishing rod and reel in the back of the van. Mr. Lewis's father testified that, when he went to Ms. Black's house the next day to get his rod back, she returned the rod to him but refused to give him the reel because it belonged to Mr. Lewis. A sheriff's deputy testified that, after Mr. Lewis reported the incident, he went to Ms. Black's house and she denied that she had the reel. According to the deputy, she initially told

him that she did not know what had happened to the reel during the incident at the lake. She later claimed that she had left the reel at the lake but took the rod so that she could return it to Mr. Lewis's father.

{¶8}    Ms. Black testified that she pushed Mr. Lewis into the lake as a prank. After he left to pick up his girlfriend, she was walking through the lake and hit the rod and reel with her feet, so she brought it out of the water and sat it on the end of the dock. When Mr. Lewis returned to the lake with his girlfriend, they angrily confronted her and her fiancé. Her fiancé did not want to argue with Mr. Lewis, so he took the rod and placed it in his van and left the reel on the dock. According to Ms. Black, she did not have any contact with the rod and reel other than carrying them out of the lake and placing them on the dock. Ms. Black's fiancé testified that Ms. Black recovered the rod and reel from the lake and that he saw them on the dock afterward. He later saw the rod at his house. He also said that he could not deny that he had the rod and reel in his hand at some point in time. He did not know what became of the reel.

{¶9}    Viewing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could find that Ms. Black knowingly exerted control over Mr. Lewis's reel without his consent with the purpose to deprive him of it. According to Mr. Lewis, Ms. Black presented the rod and reel to him after he returned to the lake, refused to give them back to him, and loaded it into her fiancé's van. Ms. Black's first assignment is overruled to the extent that it challenges the sufficiency of the evidence.

{¶10}   Regarding the weight of the evidence, Ms. Black argues that, if she intended to steal Mr. Lewis's property, it makes no sense for her to return the rod to his father. Ms. Black argues that the only version of the events that makes sense is her testimony that she brought the

rod home with her to return to Mr. Lewis's father but left the reel at the dock for Mr. Lewis and his girlfriend to take home with them.

{¶11} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. We note that, during Ms. Black's cross-examination, the State played a video of Ms. Black's conversation with the deputy. Ms. Black admitted at trial that in the video she denied recovering the reel to the deputy and opined that it was still on the bottom of the lake. On re-direct, Ms. Black testified that she did not actually see her fiancé take the reel off the rod and leave it on the dock and only learned about it later from him. On re-cross, however, she returned to saying that she had witnessed her fiancé take the reel off the rod. On the other hand, the testimony of Mr. Lewis, his girlfriend, and his father were consistent, and Mr. Lewis's testimony was consistent with what he initially told the sheriff's department about the incident. Upon review of the record, we cannot say that the jury lost its way when it found that Ms. Black purposely deprived Mr. Lewis of his fishing reel. Ms. Black's first assignment of error is overruled to the extent it challenges the manifest weight of the evidence.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT IMPROPERLY INCREASED DEFENDANT'S SENTENCE BASE[D] ON HER REFUSAL TO ACCEPT A PLEA OFFER, INCREASING HER SENTENCE AS PUNISHMENT FOR EXERCISING HER CONSTITUTIONAL RIGHT TO A JURY TRIAL.

{¶12} Ms. Black also argues that the trial court improperly imposed a harsher sentence on her because she did not accept the State's plea offer. "[A] defendant is guaranteed the right to

a trial and should never be punished for exercising that right or for refusing to enter a plea agreement * * *." *State v. O'Dell*, 45 Ohio St.3d 140 (1989), paragraph two of the syllabus. A defendant has the burden on appeal of establishing "actual vindictiveness" by the trial court. *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, ¶ 18.

{¶13} At sentencing, Ms. Black alleged that it all started as a good time and that she never intended for any of it to happen. Following her statement, the trial court agreed that "it should of never got to this point." The court said that when the case was first set, it sounded "pretty petty[.]" The court thought that the parties should work it out, and that it did not "think a jury should be brought in to * * * hear a case over a fishing pole[.]" Recognizing Ms. Black's right to a jury trial, the court stated that the reason it did not want to bring in a jury is because it thought the attorneys could work something out. He also thought that Ms. Black's fiancé would take responsibility for the theft. The court compared the demeanor of Mr. Lewis, who seemed "like a pretty nice guy" to the demeanor of Ms. Black's fiancé who "laughed about the charges[,]" "lied[,]" and "ma[d]e a complete mockery of * * * the process[.]"

{¶14} The court continued that it found Mr. Lewis credible and was going to hold Ms. Black "accountable * * *for Petty Theft." It noted that Ms. Black caused Mr. Lewis to lose a fishing reel that he was proud of and just wanted to get back. After Ms. Black pushed him, however, she continued drinking with her friends, called him names, and mocked him for losing the reel. It noted that Mr. Lewis's father tried to get the reel back, but Ms. Black did everything she could to "obstruct and to delay and to not be forthcoming." It noted that, on the deputy's body camera, Ms. Black "had plenty of opportunity to say here's where the fishing pole is, here is where the reel is which was lost." Instead, she told him that she did not know where it was. Then, in court, she said that it was left on the dock. Based on Ms. Black's inconsistent stories,

the court found that she had handled the rod and reel and was not honest during the course of the case about where she put the reel.

{¶15} The court again noted that Ms. Black was entitled to a jury trial and told her that it was "glad that [she] got one." It noted, however, that, although Ms. Black had denied the allegations, the jury had determined otherwise after reviewing all the evidence. The court explained that it was its responsibility to decide the appropriate sentence for petty theft and determined that it would fine Ms. Black $250.00 plus court costs. It also ordered $110.00 in restitution so that Mr. Lewis could replace his reel. It further sentenced her to thirty days in jail followed by six months of community control, which could be terminated early if she paid the restitution amount. The court advised her that she was not being punished for anything other than the theft charge. It again reminded her that it "believed that this was a matter that could have been worked out short of a trial, however, you have a constitutional right to go to trial and I'm not in any way imposing a penalty because you chose to go to trial." The court stated that it was "punishing you, however, for not taking responsibility in the case * * * [a]nd what I heard during the course of the case and the facts that came out and how you addressed the stolen fishing pole." It continued that "[t]his Court does not punish people for availing themselves of their constitutional rights. I do punish people though for the crimes they've committed and their lack of taking personal responsibility for those. And so maximum possible sentence in this case was a hundred eighty days and I'm giving you thirty * * *."

{¶16} Ms. Black argues that, although the trial court claimed that it was not punishing her for having a jury trial, it is "pretty clear" that the court imposed a more severe sentence because she did not accept the plea deal. We do not agree. A trial court's statements regarding a defendant's failure to take a plea "can't be read in isolation." *Rahab*, 150 Ohio St.3d 152, 2017-

Ohio-1401, at ¶ 27. Instead, this Court must review the entire record. *Id*. The trial court's explanation of its sentence reveals that it was troubled by the facts that it heard during the trial, specifically Ms. Black's interaction with the deputy and her shifting story about whether she knew the location of the reel. "[I]t has long been proper for [a] sentencing court to consider evidence heard during the trial as well as the demeanor of the accused." *O'Dell*, 45 Ohio St.3d at 147, citing *United States v. Grayson*, 438 U.S. 41, 50 (1978). This includes consideration of the defendant's truthfulness as a witness because it is "probative of [her] attitudes toward society and [her] prospects for rehabilitation[.]" *Id*., quoting *Grayson* at 50. The trial court was also concerned about Ms. Black's failure to accept responsibility for her acts. The Ohio Supreme Court has recognized that "[a]cceptance of responsibility is an appropriate sentencing consideration." *Rahab* at ¶ 17.

{¶17} Upon review of the record, we conclude that Ms. Black has not established actual vindictiveness by the trial court when it imposed her sentence. *See id*. at ¶ 18. Ms. Black's second assignment of error is overruled.

III.

{¶18} Ms. Black's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.