[Cite as *State v. Philpot*, 2020-Ohio-104.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                        Nos. 108271, 108272, and 108373

    v. :

TY'JUAN PHILPOT, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART;
                 REMANDED
**RELEASED AND JOURNALIZED:** January 16, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-14-590162-M, CR-17-621326-A, and CR-18-632516-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder, Assistant Prosecuting Attorney, *for appellee.*

Paul W. Flowers Co., L.P.A., and Louis E. Grube, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} In this consolidated appeal, defendant-appellant Ty'Juan Philpot appeals his consecutive sentences after (1) he pled guilty to one count of having weapons while under disability and one count of attempted carrying concealed

weapons in Cuyahoga C.P. No. CR-18-632516-B ("CR-18-632516") and (2) was found to have violated community control in Cuyahoga C.P. Nos. CR-14-590162-M ("CR-14-590162") and CR-17-621326-A ("CR-17-621326"). Philpot contends that (1) the sentencing journal entries in CR-14-590162 and CR-17-621326 are contrary to law to the extent they impose consecutive sentences because the trial judge did not make the requisite findings for the imposition of consecutive sentences "in the manner required by statute" and (2) the record clearly and convincingly does not support the findings set forth by the trial court for the imposition of consecutive sentences. Philpot also contends that he is entitled to additional jail-time credit and that the trial court lacked subject matter jurisdiction in CR-14-590162 due to the juvenile court's failure to comply with the juvenile transfer statutes. For the reasons that follow, we vacate the trial court's imposition of consecutive sentences in all three cases and remand for the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and if so, to make all of the required findings on the record and incorporate those findings in its sentencing journal entries. We also vacate the trial court's calculation of jail-time credit and remand for the trial court to recalculate the amount of jail-time credit to which Philpot is entitled under R.C. 2967.191. We affirm the trial court in all other respects.

**Factual Background and Procedural History**

{¶ 2} On June 10, 2014, the state filed a delinquency complaint against Philpot in the Cuyahoga County Court of Common Pleas, Juvenile Division (the "juvenile court") in Cuyahoga J.C. No. DL-14-107121, charging him with various

offenses based on allegations that he had engaged in a pattern of criminal gang activity as a member of the Heartless Felons. At that time, Philpot was 16. The state filed a motion for discretionary transfer of the case to the Cuyahoga County Court of Common Pleas, General Division (the "general division").

{¶ 3} After hearings on probable cause and Philpot's amenability to care and rehabilitation within the juvenile system, the juvenile court found that (1) there was probable cause to believe that Philpot had committed acts that would be felonies if committed by an adult, including participating in a criminal gang, engaging in a pattern of corrupt activity, conspiracy, robbery, extortion, kidnapping and attempted felonious assault, (2) there were reasonable grounds to believe that Philpot was not amenable to care or rehabilitation within the juvenile system and (3) the safety of the community may require that Philpot be subject to adult sanctions. The juvenile court transferred the matter to the general division pursuant to the discretionary transfer provisions, R.C. 2152.10(B) and 2152.12(B).

{¶ 4} On November 5, 2014, a Cuyahoga County Grand Jury indicted Philpot in CR-14-590162 on one count of participating in a criminal gang, one count of engaging in a pattern of corrupt activity, one count of kidnapping, one count of attempted felonious assault, one count of assault, two counts of robbery and two counts of extortion. The kidnapping, attempted felonious assault, robbery and extortion counts included criminal gang activity specifications. The case was assigned to Judge John Sutula. In June 2015, Philpot pled guilty to one count of attempted participating in a criminal gang (a second-degree felony), one count of

assault (a first-degree misdemeanor), one count of attempted robbery (a third-degree felony) and one count of extortion (a third-degree felony). In exchange for his guilty pleas, the criminal gang activity specifications were deleted and the remaining counts were dismissed.

{¶ 5} On July 7, 2015, the trial court sentenced Philpot to six months at the Ohio Department of Youth Services ("ODYS") on the assault count, to be served concurrently with a sentence he was then serving in an unrelated juvenile case, Cuyahoga J.C. No. DL-13-115317, at ODYS. On the remaining counts, the trial court imposed a 48-month term of community control. After he completed his term at ODYS, Philpot was ordered to serve a six-month term at a community-based correctional facility ("CBCF") on each of the felony counts. The trial court further ordered that after Philpot completed his term at the CBCF, he be subject to electronic home monitoring for 100 days, he perform 375 hours of community service, he submit to random drug testing and complete an anger management program and he obtain and maintain verifiable employment. Judge Sutula warned Philpot that if he violated community control, he would sentence him to 36 months in prison on each of the three felony counts and would run those sentences consecutively "for a total of 108 months in prison."

{¶ 6} While at the CBCF, Philpot received multiple violations for being in an unauthorized area and possessing contraband. Due to his behavior, his placement at the CBCF was terminated. On December 9, 2015, the trial court held a community control violation hearing. Philpot admitted the community control

violations. The trial court found Philpot to have violated community control and continued his community control with modified conditions. The trial court ordered Philpot to serve 120 days in the county jail. After the completion of his jail sentence, the trial court ordered that Philpot be placed on GPS monitoring for 180 days. Once again, the trial court warned: "Violation of the terms and conditions [of community control] may result in more restrictive sanctions as approved by law. 108 months in prison, 36 months on each of the fel[ony]-3's consecutive."

{¶ 7} While he was on community control, Philpot allegedly committed additional criminal offenses. On October 16, 2016, Philpot was arrested after he was indicted on charges of robbery, kidnapping and having a weapon while under disability in Cuyahoga C.P. No. CR-16-611522-B. Those charges were dismissed on March 29, 2017. On March 30, 2017, the trial court held a second community control violation hearing. Once again, Philpot admitted the violation. The trial court found Philpot to have violated community control, continued his community control with modified conditions and ordered that Philpot receive transdermal alcohol detection monitoring for 120 days and perform an additional 100 hours of community service. The trial court warned Philpot that the "[n]ext violation" would be "108 months in prison, 36 months on each count, and those will run consecutive."

{¶ 8} On September 11, 2017, Philpot was arrested on new charges. In CR-17-621326, Philpot waived indictment and was charged by information with one count of having weapons while under disability, one count of improperly handling a firearm in a motor vehicle, one count of carrying a concealed weapon and one count

of obstructing official business. Each of the charges included a forfeiture specification. The case was assigned to Judge John Sutula. On October 13, 2017, Philpot pled guilty to the having weapons while under disability and obstructing official business counts and the remaining counts were dismissed. On November 2, 2017, the trial court conducted a sentencing hearing in CR-17-621326 and a third violation of community control hearing in CR-14-590162. In CR-17-621326, the trial court sentenced Philpot to 90 days in jail (suspended) on the obstructing official business count and three years of community control on the having weapons while under disability count. Philpot was ordered to serve a six-month term at a CBCF. The trial court imposed 180 days of GPS monitoring after Philpot completed his term at the CBCF and also ordered Philpot to perform 200 hours of community service, submit to random drug testing, complete an inpatient drug treatment program, obtain and maintain verifiable employment and obtain his GED. The trial court advised Philpot that if he violated community control he would receive a 36-month prison sentence.

{¶ 9} With respect to Philpot's alleged community control violations in CR-14-590162, the trial court found Philpot to have violated community control, continued his community control with modified conditions and ordered Philpot to perform an additional 300 hours of community service. Judge Sutula warned Philpot that this was his "last opportunity" and that if he violated community control again, he would receive a 36-month prison sentence on each of the felony counts, to be served consecutively:

THE COURT: * * * Next violation will be 108 months in prison. That's 36 months as to each F-2 and F-3, consecutive. That's 108 months. You got 36 here. That's 144. How long is that?

THE DEFENDANT: Twelve years.

THE COURT: Twelve.

THE DEFENDANT: Twelve years, right.

[THE COURT:] This is your last opportunity. Do you understand me? * * * Do you understand? Last opportunity. Last-ditch effort here.

THE DEFENDANT: I understand.

{¶ 10} Philpot was discharged from the CBCF for physical aggression and, on December 27, 2017, the trial court held a fourth community control violation hearing in CR-14-590162 and an initial community control violation hearing in CR-17-621326. The trial court continued the hearing so it could determine whether Philpot was eligible for placement in a CBCF outside Cuyahoga County. In January 2018, Philpot was accepted into a Lorain County/Medina County CBCF. Philpot completed that CBCF program and was released in May 2018.

{¶ 11} On October 2, 2018, a Cuyahoga County Grand Jury indicted Philpot on one count of having weapons while under disability and one count of carrying concealed weapons in a third criminal case, CR-18-632516. Both counts included forfeiture specifications. The case was assigned to Judge Pamela Barker.

{¶ 12} In December 2018, Philpot pled guilty to the having weapons while under disability count and an amended count of attempted carrying concealed weapons. Judge Barker ordered a presentence investigation report and scheduled

the matter for sentencing. On January 16, 2019, Judge Barker conducted the sentencing hearing in CR-18-632516 and the community control violation hearing in CR-14-590162 and CR-17-621326.

{¶ 13} At the outset of the hearing, Judge Barker observed that CR-14-590162 and CR-17-621326 "have been presided over by the Honorable John Sutula" and that Judge Sutula "has asked that this Court handle the hearings associated with the alleged probation violations in those two cases." Judge Barker indicated that Judge Sutula had previously "reserved" a 108-month sentence in CR-14-590162 and a 36-month sentence in CR-17-621326 and that he had stated he would run those sentences consecutively if Philpot committed another community control violation. Judge Barker explained:

> I'm basically taking over for Judge Sutula in terms of handling this matter because of the third case that's before me, but therefore I wanted to know what Judge Sutula had to say with regard to this defendant based upon the numerous violations that the record indicates have occurred over some years.

{¶ 14} After hearing from the state, Philpot, defense counsel and Philpot's probation officer and reviewing the presentence investigation report prepared for CR-18-632516, the status report from Philpot's probation officer, the "prior presentence investigation reports and the journal entries that were assigned by Judge Sutula relative to the other probation violation hearings" and considering the purposes and principles of sentencing under R.C. 2929.11 and the relevant sentencing factors under R.C. 2929.12, Judge Barker sentenced Philpot to an aggregate sentence of 14 years as follows:

- In CR-14-590162, to a sentence of 108 months — 36 months on the attempted criminal gang activity count, 36 months on the attempted robbery count, 36 months on the extortion count and 180 days on the assault count, with the sentence on the assault count to be served concurrently to the sentences on the other counts and the sentences on the other counts to be served consecutively to each other and consecutively to the sentences imposed in CR-17-621326 and CR-18-632516.

- In CR-17-621326, to a sentence of 36 months — 36 months on the having weapons while under disability count and 90 days on the obstructing official business count to be served concurrently to each other and consecutively to the sentences imposed in CR-14-590162 and CR-18-621326.

- In CR-18-632516, to a sentence of 24 months — 24 months on the having weapons while under disability count and 12 months on the attempted carrying of concealed weapons count to be served concurrently to each other and consecutively to the sentences imposed in CR-14-590162 and CR-17-621326.

{¶ 15} Judge Barker also imposed three years of postrelease control, ordered Philpot to pay court costs and indicated that Philpot would be given 709 days of jail-time credit for the time he had already spent in custody.[1]

{¶ 16} With respect to her decision to run the sentences on the attempted criminal gang activity count, the attempted robbery count and the extortion count in CR-14-590162 consecutively, Judge Barker stated that this was "based upon Judge's Sutula's representations that that would be what would occur." With respect

---

[1] The transcript from the sentencing hearing reflects that Judge Barker informed Philpot that he was entitled to 578 days of jail-time credit in CR-14-590162 and CR-17-621326 and 131 days of jail-time credit in CR-18-632516 and that "we will add those together and that means you'll be given credit for 799 days." 578 and 131 totals 709, not 799. The sentencing journal entries in all three cases indicate that Philpot was to receive 709 days of jail-time credit.

to her decision to run the aggregate sentences in the three cases consecutively, Judge Barker stated:

> Now, the 24 months in my case and the time I've already indicated imposed in the other two cases that were before Judge Sutula will be served consecutively. And that is because the Court finds that consecutive service is necessary to protect the public from future crime and to punish the offender, and consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. And the Court also finds that the offender committed one or more of the multiple offenses while the offender was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Ohio Revised Code and the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 17} On January 17, 2019, Judge Barker issued a sentencing journal entry in CR-18-632516, setting forth the sentences she had imposed at the sentencing hearing. With respect to the imposition of consecutive sentences, she stated: "The 24 months to run consecutive with the 108 months in Case 590162 and the 36 months in Case 621326 for a total of 14 years in prison." She set forth her findings in support of the imposition of consecutive sentences as follows:

> The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, the defendant committed one or more of the multiple offenses while the defendant was awaiting trial or sentencing or was under a community control or was under post-release control for a prior offense, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

{¶ 18} On February 4, 2019, Judge Sutula issued sentencing journal entries in CR-14-590162 and CR-17-621326 setting forth the sentences Judge Barker had

imposed at the January 16, 2019 sentencing hearing. In the sentencing journal entry in CR-14-590162, Judge Sutula stated: "The 108 months will run consecutive with the 24 months in Case 632516 and the 36 months in Case 621326 for a total of 14 years in prison." In the sentencing journal entry in CR-17-621326, he stated: "The 36 months will run consecutive to the 108 months in Case 590162 and the 24 months in Case 632516 for a total of 14 years in prison." Both of the February 4, 2019 sentencing journal entries included the following findings in support of the imposition of consecutive sentences:

> The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, the defendant committed one or more of the multiple offenses while the defendant was awaiting trial or sentencing or was under a community control or was under post-release control for a prior offense, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

{¶ 19} Philpot appealed, raising four assignments of error for review:

Assignment of Error I
The trial court's consecutive sentencing orders are contrary to law.

Assignment of Error II
The trial court's consecutive sentencing orders are not supported by the record.

Assignment of Error III
The defendant is entitled to additional jail-time credit for time spent in juvenile and community-based correction facilities.

Assignment of Error IV

The trial court lacked subject matter jurisdiction over Case No. CR-14-590162-M because the juvenile division failed to follow the statutory procedures imposed by R.C. 2152.12(B)(3).

## Law and Analysis

### Imposition of Consecutive Sentences

{¶ 20} Philpot's first and second assignments of error are interrelated. Accordingly, we address them together.

{¶ 21} Philpot's first and second assignment of errors relate to the trial court's imposition of consecutive sentences. R.C. 2929.14(C)(4), which governs the imposition of consecutive sentences, provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 22} The trial court must make the required statutory findings at the sentencing hearing and incorporate those findings into its sentencing journal entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. To make the requisite "findings" under the statute, "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999).

{¶ 23} There are two ways a defendant can challenge consecutive sentences on appeal. *State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, ¶ 7. First, the defendant can argue that consecutive sentences are contrary to law because the trial court failed to make the findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b). Second, the defendant can argue that the record clearly and convincingly does not support the findings made under R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a). Philpot raises both arguments here.

{¶ 24} In his first assignment of error, Philpot argues that the sentencing journal entries Judge Sutula entered in CR-14-590162 and CR-17-621326 are contrary to law to the extent they impose consecutive sentences[2] because Judge Sutula did not make any consecutive sentencing findings at the sentencing hearing. In his second assignment of error, Philpot argues that the record clearly and

---

[2] Philpot does not challenge Judge Barker's authority to sentence him on the community control violations in the cases assigned to Judge Sutula or the individual sentences imposed on any of the counts in the three cases at issue. Accordingly, we do not address those issues here.

convincingly does not support the findings set forth by the trial court for the imposition of consecutive sentences. Specifically, he contends that "the shared record in these appeals" clearly and convincingly does not support the trial court's findings that "consecutive service is necessary to protect the public from future crime or to punish defendant" and that "consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public" because (1) Philpot is in his early twenties, (2) his most significant crimes were committed when he was a juvenile in a juvenile detention facility, (3) the court's staff clinical psychologist testified that Philpot would likely grow out of his delinquent behavior as he aged into adulthood, (4) during the time Philpot has spent outside of confinement as an adult, he "has committed only two crimes of possession of a weapon — and no allegations of violence have been proven against him" and (5) Philpot had left the gang with which he had previously been involved.

{¶ 25} The state, in turn, argues that the record supports the trial court's findings in support of the imposition of consecutive sentences, pointing out that Philpot had six felony convictions by the age of 21 (at least three of which involved gun crimes), he was "an admitted member of the Heartless Felons," he had a prior juvenile adjudication for kidnapping and robbery, he was "kicked out" of the CBCF for fighting and gang activity and he continued to reoffend despite the numerous opportunities the trial court gave him to correct his behavior and turn his life around.

{¶ 26} We agree with Philpot that the trial court's imposition of consecutive sentences in CR-14-590162 and CR-17-621326 is contrary to law. First, no findings were made at the December 27, 2018 sentencing hearing (or at any other hearing) in support of the decision to run the three 36-month sentences imposed on the attempted criminal gang activity count, the attempted robbery count and the extortion count in CR-14-590162 consecutively. At the December 27, 2018 hearing, Judge Barker stated that she was ordering that the three 36-month sentences in CR-14-590162 be served consecutively "based upon Judge's Sutula's representations that that would be what would occur." She then proceeded to set forth findings supporting her decision that "the 24 months in my case and the time I've already indicated imposed in the other two cases that were before Judge Sutula" — i.e., the 108-month sentence in CR-14-590162 and the 36-month sentence in CR-17-621326 — "be served consecutively." Judge Barker thereafter issued a sentencing journal entry in CR-18-632516 setting forth all of the requisite findings in support of her decision to order the 24-month sentence she imposed in CR-18-632516 be served consecutively to the sentences imposed in CR-14-590162 and CR-17-621326, and Judge Sutula thereafter issued sentencing journal entries in CR-14-590162 and CR-17-621326 setting forth findings in support of the imposition of consecutive sentences as to those cases — even though he did not preside at the December 27,

2018 sentencing hearing and did not make any of the requisite findings at the sentencing hearing.[3]

{¶ 27} It is well-established that where a trial court has imposed consecutive sentences in a sentencing journal entry, but failed to make all of the requisite statutory findings in support of the imposition of consecutive sentences at the sentencing hearing, the imposition of consecutive sentences is contrary to law. *See, e.g., Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 36-37; *State v. Tidmore*, 8th Dist. Cuyahoga No. 107369, 2019-Ohio-1529, ¶ 21; *State v. Lariche*, 8th Dist. Cuyahoga No. 106106, 2018-Ohio-3581, ¶ 25. In such circumstances, the proper remedy is to vacate the consecutive sentences and remand for resentencing on the issue. *See, e.g., Tidmore* at ¶ 30; *State v. Wells*, 8th Dist. Cuyahoga No. 105723, 2017-Ohio-8738, ¶ 5-7; *State v. Ferrell*, 8th Dist. Cuyahoga No. 104047, 2016-Ohio-7715, ¶ 7-9. We do not believe a different result is warranted here where one trial judge attempts to memorialize certain findings made by another trial judge, who was not assigned to the case, in a sentencing journal entry.

{¶ 28} As such, the imposition of consecutive sentences in CR-14-590162 and CR-17-621326 is contrary to law. We vacate Philpot's consecutive sentences in all three cases and remand for the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to make all of the

---

[3] Judge Pamela Barker sat on the Cuyahoga County Court of Common Pleas until June 18, 2019. The journal entries signed by Judge John Sutula were signed and filed with the clerk of courts on February 4, 2019, so there was no reason that Judge Barker could not have issued the entries.

required findings on the record and incorporate those findings into its sentencing journal entries.[4]

**{¶ 29}** We sustain Philpot's first assignment of error. Based on our resolution of Philpot's first assignment of error, his second assignment of error is moot.

**Jail-Time Credit**

**{¶ 30}** In his third assignment of error, Philpot argues that the trial court failed to give him jail-time credit for all of the time he spent in confinement. Philpot contends that he spent a total of 1,157 days in confinement, including time spent in ODYS, jail and at various CBCF facilities, but was only given 709 days of jail-time credit.

**{¶ 31}** "Criminal defendants have a right to jail-time credit." *State v. Thompson*, 8th Dist. Cuyahoga No. 102326, 2015-Ohio-3882, ¶ 21. R.C. 2967.191 provides that a prison term shall be reduced "by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced."

---

[4] Given that Philpot's consecutive sentences in CR-14-590162 and CR-17-621326 are contrary to law and must be vacated and given that Judge Barker's decision to run the 24-month sentence in CR-18-632516 "consecutive with" the sentences imposed in CR-14-590162 and CR-17-621326 involved an expectation — "based upon Judge's Sutula's representations that that would be what would occur" — that Philpot would receive consecutive prison sentences totaling 108 months in CR-14-590162, we believe that the appropriate relief in this case is to vacate the imposition of consecutive sentences in all three cases and to remand all three cases for resentencing on the issue of consecutive sentences.

{¶ 32} "Although the [department of rehabilitation and correction] has a mandatory duty pursuant to R.C. 2967.191 to credit an inmate with jail time already served, it is the trial court that makes the factual determination as to the number of days of confinement that a defendant is entitled to have credited toward [his or her] sentence." *State ex rel. Rankin v. Ohio Adult Parole Auth.*, 98 Ohio St.3d 476, 2003-Ohio-2061, 786 N.E.2d 1286, ¶ 7. Former R.C. 2929.19(B)(2)(f)(i), which was in effect at the time of Philpot's sentencing, provides, in relevant part:

> [I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall * * * [d]etermine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the stated prison term under section 2967.191 of the Revised Code. The court's calculation shall not include the number of days, if any, that the offender served in the custody of the department of rehabilitation and correction arising out of any prior offense for which the prisoner was convicted and sentenced.

{¶ 33} Philpot did not object to the trial court's calculation of jail-time credit and did not file a motion to correct jail-time credit below. Accordingly, we review the trial court's calculation of jail-time credit for plain error. *See, e.g., State v. Thomas*, 8th Dist. Cuyahoga No. 105824, 2018-Ohio-4106, ¶ 43; *State v. Lowe*, 8th Dist. Cuyahoga No. 99176, 2013-Ohio-3913, ¶ 22. "A trial court commits plain error when it fails to include the appropriate amount of jail-time credit in the sentencing entry." *Thomas* at ¶ 43.

{¶ 34} It is unclear from the record how the trial court calculated the 709 days of jail-time credit with which it credited Philpot in this case. The state has indicated that it "does not dispute any of Philpot's calculations regarding jail-time credit and defers to this Court regarding the number of days to which Philpot is entitled." Although it appears, based on the record before us, that the trial court did not properly calculate Philpot's jail-time credit, there is insufficient information in the record for us to make a determination as to precise number of days of jail-time credit to which Philpot is entitled. Accordingly, we sustain Philpot's third assignment of error, vacate the trial court's calculation of jail-time credit and remand for the trial court to recalculate the amount of jail-time credit to which Philpot is entitled under R.C. 2967.191.

**Discretionary Bindover**

{¶ 35} In his fourth and final assignment of error, Philpot argues that the general division never acquired subject matter jurisdiction over CR-14-590162 because the juvenile court did not state on the record which factors weighed for and against Philpot's bindover to the general division as required under R.C. 2152.12(B)(3). He contends that, as a result, all of the proceedings in the case were void ad initio and that we should, therefore, reverse and vacate all orders entered in CR-14-590162. Philpot's argument is meritless.

{¶ 36} Ohio's juvenile courts have "exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute crimes if committed by an adult." *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d

584, ¶ 11, citing R.C. 2151.23(A); *State v. Mays*, 2014-Ohio-3815, 18 N.E.3d 850, ¶ 17 (8th Dist.). Under certain circumstances, however, the juvenile court has the authority to transfer a case, or bind a juvenile over, to the adult criminal system to face criminal sanctions. R.C. 2152.10; 2152.12; *In re M.P.* at ¶ 11. There are two types of transfers under Ohio's juvenile justice system — mandatory transfers and discretionary transfer. *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 10. CR-14-590162 involved a discretionary transfer.

{¶ 37} A juvenile court may transfer a case to the general division in a discretionary bindover after a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, if it finds: (1) the child was fourteen years of age or older at the time of the act charged; (2) there is probable cause to believe that the child committed the act charged and (3) the child is not amenable to care or rehabilitation within the juvenile system and the safety of the community may require that the child be subject to adult sanctions. R.C. 2152.10(B); R.C. 2152.12(B). If the first two elements are met, then the juvenile court must then "continue the proceeding for a full investigation" into "'the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child by a public or private agency or a person qualified to make the examination.'" *State v. Crosby*, 8th Dist. Cuyahoga Nos. 107392 and 107551, 2019-Ohio-2217, ¶ 26, quoting R.C. 2152.12(C); *see also In re M.P.* at ¶ 12; Juv.R. 30(C).

**{¶ 38}** In determining whether a child is amenable to care or rehabilitation within the juvenile system, the juvenile court must consider all relevant factors, including the specific factors identified in R.C. 2152.12(D) and (E), that weigh in favor of and against a transfer. R.C. 2152.12(B)(3). R.C. 2152.12(B)(3) provides that "[t]he record shall indicate the specific factors that were applicable and that the court weighed." Further, "[u]pon the transfer of a case under [R.C. 2152.12(B)], the juvenile court shall state the reasons for the transfer on the record." R.C. 2152.12(I); *see also* Juv.R. 30(G) ("The order of transfer shall state the reasons for transfer.").

**{¶ 39}** Following a thorough review of the record, we find that the juvenile court complied with its obligations under R.C. 2152.12(B). There is no dispute that the juvenile court made all of the findings required under R.C. 2152.12(B)(1)-(3). The record reflects that the investigation required under R.C. 2152.12(C) was conducted and that the juvenile court reviewed and considered the results of that investigation. Although Philpot asserts that "there is no indication in the record which factors weighed for and against [his] transfer," the juvenile court, in its October 28, 2014 journal entry transferring the case to the general division, clearly identified each of the factors it considered in determining that Philpot was not amenable to care or rehabilitation, setting forth its findings with respect to each of those factors as follows:

> The court finds after a full investigation, including a mental examination of said child made by a duly qualified person, and after full consideration of the child's prior juvenile record, family environment, school record, efforts previously made to treat and rehabilitate the child, including prior commitments to the Department of Youth

Services, the nature and severity of the offense herein, the age, physical, and mental condition of the victim as effected by the matter herein, and other matters of evidence, that there are reasonable grounds to believe that the child herein is <u>NOT</u> amenable to care or rehabilitation within the juvenile system.

The court further finds that the safety of the community may require that the child be subject to adult sanctions.

The court considered the relevant factors in favor of transfer pursuant to O.R.C. § 2152.12(D) and makes the following findings:

The victim suffered physical or psychological harm, or serious economic harm.
The physical or psychological harm suffered by the victim was exacerbated because of the physical or psychological vulnerability or the age of the victim.
The child's relationship with the victim facilitated the act charged.
The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.
At the time of the act charged, the child was awaiting a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.
The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.
The child is emotionally, physically, or psychologically mature enough for the transfer.
There is not sufficient time to rehabilitate the child within the juvenile system.

The court considered the relevant factors against transfer pursuant to O.R.C. § 2152.12(E) and finds that no factors are applicable.

{¶ 40} We find that the juvenile court complied with R.C. 2152.12(B)(3) by identifying the specific factors it weighed on the record. Philpot's fourth assignment of error is overruled.

{¶ 41} Judgment affirmed in part; vacated in part; remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

PATRICIA ANN BLACKMON, P.J., and
ANITA LASTER MAYS, J., CONCUR