[Cite as *State v. Tinker*, 2023-Ohio-3216.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

HEATHER ANN TINKER,

        Defendant-Appellant.

CASE NO. 2022-A-0113

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 00395

**O P I N I O N**

Decided: September 11, 2023
Judgment: Reversed and remanded

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Christopher R. Fortunato*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Margaret Brunarski*, Ashtabula County Public Defender, and *Michael J. Ledenko*, Assistant Public Defender, 22 East Jefferson Street, Jefferson, OH 44047 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Heather Ann Tinker, appeals from her sentences for Tampering with Evidence, Obstructing Justice, and Gross Abuse of a Corpse, in the Ashtabula County Court of Common Pleas. For the following reasons, we reverse the judgment of the lower court and remand for further proceedings consistent with this opinion.

{¶2} On October 22, 2021, Tinker was indicted by the Ashtabula County Grand Jury for Tampering with Evidence, a felony of the third degree, in violation of R.C.

2921.12(A)(1) and (2); Obstructing Justice, a felony of the third degree, in violation of R.C. 2921.32(A)(5); and Gross Abuse of a Corpse, a felony of the fifth degree, in violation of R.C. 2927.01(B).

{¶3} A trial was held on August 23-25, 2022. In summary, evidence was presented that Tinker's boyfriend, Daniel Taylor, killed his roommate, Crystal Garney, and pled guilty to murder. Testimony demonstrated that after the murder, on Wednesday, September 8, 2021, Tinker assisted in moving and hiding Garney's body by bringing plastic to Taylor to wrap up the body and by helping Taylor and another individual place the body in the back of a pickup truck. It further established that Tinker was present when Garney's body was placed in a wooded area and covered with pallets. Testimony established that Tinker denied knowledge of Garney's death when questioned by police and made statements regarding her whereabouts on Wednesday that were inconsistent with text messages gathered by police.

{¶4} A sentencing hearing was held on October 12, 2022. Defense counsel stated Tinker maintained she had not committed the acts for which she was found guilty but accepted the jury found her guilty. Counsel argued she was least culpable of those involved and had "minimal" involvement. Counsel emphasized that she had no felony adult criminal record and she has struggled with substance abuse. Tinker's friend testified regarding her character, her need for counseling, and emphasized that Tinker's four children needed their mother in their lives. Tinker did not give a statement at the hearing.

{¶5} The victim's daughter spoke and emphasized the fear of not knowing where her mother was for five days. She expressed anger about Tinker dumping the body and then returning to the victim's house to make breakfast. The victim's ex-husband

2

discussed the pain that had been caused to her children and her parents. The State argued the actions constituted the worst forms of the offenses and requested the maximum sentence of seven years.

{¶6} The court found that Tinker was unremorseful and unrepentant. It observed that Tinker had a prior misdemeanor record relating to drug offenses. The court took note of the "cold-blooded" nature of the murder. The Court found that the "seriousness factors in this case override the less serious factors, and any type of community control would demean the seriousness of the offense." It ordered Tinker to serve a term of three years in prison for Tampering with Evidence, three years for Obstructing Justice, and one year for Gross Abuse of a Corpse, with the sentences to be served consecutively for a total term of seven years in prison. It then found that "these three offenses were committed as part of one or more courses of conduct, and the harm caused here was so incredibly great that no single prison term for these three offenses adequately reflects the seriousness of her chosen conduct." The court issued an October 18, 2022 Judgment Entry memorializing the sentence. The Entry contained the following consecutive sentencing findings: that consecutive terms are necessary to protect the public from future crimes and punish the offender; they are not disproportionate to the conduct of the defendant and the danger she poses to the public; and at least two of the offenses were part of a course of conduct and the harm caused was so great that no single term adequately reflects the seriousness of the offender's conduct.

{¶7} Tinker timely appeals and raises the following assignment of error:

{¶8} "The trial court clearly and convincingly committed prejudicial error that deprived Heather A. Tinker of due process of law as guaranteed by the Fourteenth

3

Amendment to the United States Constitution and Article One, Section Ten of the Ohio Constitution and violated Revised Code 2953.08 by sentencing her to maximum and consecutive prison sentences after trial."

{¶9} Tinker argues that the trial judge's comments at the sentencing hearing indicated it imposed maximum and consecutive sentences because she took the case to trial and the sentence should be reversed as it is vindictive. The State contends that the judge did not indicate the sentence was a result of Tinker going to trial but instead it "only expressed * * * astonishment at the Appellant's attitude."[1]

{¶10} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 [or] * * * [t]hat the sentence is otherwise contrary to law." *Id.*

{¶11} "[A] defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter a plea agreement * * *." *State v. O'Dell*, 45 Ohio St.3d 140, 543 N.E.2d 1220 (1989), paragraph two of the syllabus; *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("[t]o

---

1. The State also presents argument on pages 17-18 relating to gross sexual imposition and the demonstration that the victim was under the age of 13 years old. These errant arguments will not be considered by this court. We encourage the State to exercise diligence in reviewing its briefs to ensure the argument presented is appropriate and applicable to the case at hand.

4

Case No. 2022-A-0113

punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort"). The Ohio Supreme Court has explained that "[t]here is no question * * * that a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 8. It held that, where a defendant rejects a plea bargain and is sentenced to a harsher term: "[t]he burden is on the defendant to show the judge acted vindictively. And an appellate court may reverse a sentence for vindictiveness only if, upon its examination of the entire record, it clearly and convincingly finds that the sentence was based on actual vindictiveness." *Id.* at ¶ 3.

{¶12} In support of her argument that vindictive sentencing occurred, Tinker cites *Rahab v. Buchanan*, S.D.Ohio No. 1:17-cv-412, 2018 WL 2764454 (June 8, 2018). This case was a habeas corpus action taken following Rahab's appeal to the Ohio Supreme Court. The United States Magistrate Judge issued a Report and Recommendations in response to Rahab's contention that he was punished for exercising his right to a jury trial. It concluded that actual vindictiveness was demonstrated by the record, referencing the following comments by the trial court: defendant "went to trial with a prove-it defense"; "[he] gambled, he lost"; and "I looked at you and said, do you want the three or not; you're looking at eight. And you told me, I don't want three. * * * Well, guess what, you lost your gambling. You did this. You had no defense, and you wouldn't take responsibility. You wanted to go to trial. All right, big winner you are." *Id.* at *9-11.

{¶13} In contrast to the federal court magistrate, when the Ohio Supreme Court addressed this issue, it concluded that the court's sentence was based on a variety of factors including the defendant's lack of remorse, lengthy juvenile record and impact of

5

his conduct on the victim and was "not convinced that the court sentenced Rahab based on vindictiveness" rather than these other factors. *Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, at ¶ 32. Further, in the federal court matter, the District Court judge ultimately found the issue of whether the sentence was vindictive to be moot and denied the habeas petition since the defendant had been released from prison. *Rahab v. Warden*, S.D.Ohio No. 1:17-cv-412, 2020 WL 532373, *1 (Feb. 3, 2020).

{¶14} Nonetheless, the concerns raised in the *Rahab* cases are not implicated in the present matter, where the court made no comments whatsoever referencing Tinker's decision not to take a plea or to go to trial, as will be outlined further below.

{¶15} Tinker's argument is based on several different comments made by the court. First, following the statement of Tinker's friend, Amber Bourbonnais, at the sentencing hearing, wherein she opined that Tinker's children need her mother, the following exchange occurred:

> The Court: You're aware that Heather has four kids?
>
> Bourbonnais: Yes.
>
> The Court: You're aware that she doesn't have custody of any of them, right?
>
> Bourbonnais: Correct, yes.

The foregoing exchange has no relation to Tinker's decision to exercise her right to proceed to trial nor does it convey that the court's sentence was based on the exercise of her right to trial. It was merely responsive to the witness' emphasis on the request to be lenient on sentencing due to Tinker's status as a mother.

{¶16} Tinker also points to the following exchange, which occurred after Tinker indicated she would not give a statement:

6

> The Court: So, after the murder, you took your kids over there to spend the night?
>
> Tinker: No, Your Honor.
>
> The Court: Okay. I won't even go any further.

This line of inquiry relates to testimony presented at trial that Tinker and her children stayed at the victim's home the day after the murder, spending time with her boyfriend who had murdered the victim. As with the foregoing, this does not indicate vindictiveness relating to Tinker's choice to go to trial. Rather, it evidences the court's concern with Tinker's behavior in this matter and her denial of that conduct.

{¶17} Finally, Tinker references the judge's remarks made during its comments while sentencing Tinker.

> I was going to ask the Defendant some questions, but it's clear that she's, I think you can say, so genuinely unremorseful and unrepentant and uncaring, that it would be pointless. * * * Looking at the seriousness, we had the Defendant's lover, boyfriend, co-defendant, Daniel Taylor, commit an incredibly cold-blooded unnecessary, unjustified murder, and he admitted to it. Another co-defendant, Randall Campbell, described what happened and how it occurred afterwards, and helped fill in the blanks.
>
> * * *
>
> I had questions I was prepared to ask you. I'm not going to be asking those. I think it would be a waste of the Court's time and your time, because the way in which you sit here in court and have acted throughout this case is you don't think there's anything wrong with killing Crystal, you don't think there's anything wrong with dumping her body along the railroad tracks, so there isn't anything I'm ever going to tell you to change that opinion.

As with the other comments, these do not reference Tinker's decision to go to trial. Instead, they recognize her conduct and attitude. It is evident the court was concerned with Tinker's lack of remorse. This is different from a determination that she should be

7

punished for her failure to take a plea. A defendant's demeanor is a relevant consideration in sentencing. *See State v. Detamore*, 4th Dist. Athens No. 00CA035, 2001 WL 1913879, *4 (Mar. 20, 2001) ("defendant's behavior throughout the course of the trial [is] relevant to the sentencing") (citation omitted); *State v. Black*, 9th Dist. Wayne No. 19AP0013, 2019-Ohio-5017, ¶ 16. While the court chose to give maximum and consecutive sentences and indicated its displeasure with Tinker's conduct, we find nothing in the sentencing transcript that indicates the court's sentence was based on the exercise of her right to a jury trial and reject Tinker's assigned error. *See State v. Doak*, 11th Dist. Portage No. 2020-P-0046, 2021-Ohio-787, ¶ 14 (although the court gave the defendant the harshest sentence available under the statute, "[n]othing in the record suggests the trial court's decision on sentencing was motivated by an urge to penalize appellant for exercising his right to be tried by a jury or retaliate against him for electing to proceed with a jury trial").

{¶18} Although we find that there is no reversible error in relation to the foregoing, we sua sponte address the trial court's failure to make all of the required consecutive sentencing findings. An appellate court may recognize errors not raised by appellant sua sponte pursuant to Crim.R. 52 where there is plain error. *State v. Burke*, 11th Dist. Trumbull Nos. 2018-T-0032 and 2018-T-0035, 2019-Ohio-1951, ¶ 151; Crim.R. 52(B) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). This standard has been applied where a court errs in ordering consecutive sentences. *State v. Magee*, 2019-Ohio-1921, 136 N.E.3d 800, ¶ 25 (6th Dist.); *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 66 and 71 (8th Dist.).

8

Case No. 2022-A-0113

{¶19} Pursuant to R.C. 2929.14(C)(4), separate prison terms for multiple offenses may be ordered to be served consecutively if the court finds it is "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," *and* finds any of the R.C. 2929.14(C)(4)(a)-(c) factors are present. The pertinent R.C. 2929.14(C)(4)(a)-(c) factor here is (b): "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed * * * adequately reflects the seriousness of the offender's conduct."

{¶20} "To impose consecutive terms, the court 'is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry.'" *State v. Elliot*, 11th Dist. Trumbull No. 2021-T-0045, 2023-Ohio-412, ¶ 9, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. "The trial court has no obligation * * * to engage in a 'word-for-word recitation' of the language in the statute or to set forth its reasons to support its findings, as long as they are discernible in the record." (Citation omitted.) *State v. Cozzone*, 2018-Ohio-2249, 114 N.E.3d 601, ¶ 27 (11th Dist.). "[A] consecutive sentence is contrary to law where the trial court fails to make the consecutive sentencing findings as required by R.C. 2929.14(C)(4)." (Citation omitted.) *State v. Bilicic*, 11th Dist. Ashtabula No. 2017-A-0066, 2018-Ohio-5377, ¶ 45.

{¶21} There is no question that the trial court made findings as to each of the required consecutive sentencing factors in its judgment entry of sentence. However,

9

while a failure to incorporate findings into the sentencing entry is a clerical mistake that can be remedied by remanding to issue a nunc pro tunc entry, such entry "cannot cure the failure to make the required findings at the time of imposing sentence" and reversal is warranted. *Bonnell* at ¶ 30 and 37; *State v. Philpot*, 8th Dist. Cuyahoga Nos. 108271 et al., 2020-Ohio-104, ¶ 27 ("it is well-established that where a trial court has imposed consecutive sentences in a sentencing journal entry, but failed to make all of the requisite statutory findings in support of the imposition of consecutive sentences at the sentencing hearing, the imposition of consecutive sentences is contrary to law").

{¶22} The lower court did not make explicit consecutive sentencing findings, other than the R.C. 2929.14(C)(4)(b) finding relating to the course of conduct. Although a word-for-word recitation of the findings is not required, we also cannot discern from the record that the court made the required findings as to the necessity to protect the public from future crime or to punish the offender or the proportionality of the sentence to the danger Tinker poses to the public. The court did not address the necessity of the sentences and failed to make findings relating to any danger Tinker poses to the public.

{¶23} Given the trial court's failure to make all necessary consecutive sentencing findings at the sentencing hearing, we vacate the sentence and remand with instructions that the trial court resentence Tinker and, if it re-imposes consecutive sentences, make all necessary statutory findings at the sentencing hearing and in the sentencing entry. *State v. Ferrell*, 11th Dist. Portage No. 2017-P-0069, 2019-Ohio-836, ¶ 40.

{¶24} The sole assignment of error is without merit but the sentence is sua sponte reversed as discussed above.

{¶25} For the foregoing reasons, Tinker's sentences for Tampering with Evidence,

10

Obstructing Justice, and Gross Abuse of a Corpse in the Ashtabula County Court of Common Pleas are reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

EUGENE A. LUCCI, J.,

ROBERT J. PATTON, J.,

concur.